**SECURITY NATIONAL LIFE INSURANCE COMPANY, Appellant,**

**v.**

**Beatrice B. WASHINGTON, Appellee.
No. 1615.**

Municipal Court of Appeals for the District of Columbia.

Argued March 7, 1955.

Decided April 27, 1955.

N. Meyer Baker, Washington, D. C., for appellant.

Samuel C. Klein, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

The primary question is whether appellant insurance company, a foreign corporation, is amenable to substituted service of process in a suit on a life insurance policy. Service was made on the Superintendent of Insurance of the District of Columbia, who in turn forwarded copy of the complaint and summons to defendant at its office in St. Louis, Missouri, as required by Code 1951, § 35–423. That section provides in part: "* * * every foreign or alien company now or hereafter transacting business in the District, and every foreign or alien company now or hereafter soliciting, selling, or writing insurance on any resident of the District, through the medium of the United States mails, shall file with the superintendent a duly executed instrument appointing * * * him * * * lawful attorney of such company upon whom all lawful process * * * may be served

* * *. Failure of any such company to file such instrument * * * shall not invalidate any service made by serving the superintendent. * * *"

Defendant insurance company challenged the validity of the service by motion to quash, and at the trial by motions for instructed verdict. Such motions were overruled and the case being submitted to the jury, there was a verdict in favor of plaintiff. Defendant appeals.

Defendant had issued its certificate of insurance on the life of George Washington (whose widow brought this action as beneficiary) in connection with a group policy it had executed for the Independent Movers' & Warehousemen's Association. The insurer contended that it was not subject to the jurisdiction of our courts because it was not doing business in the District of Columbia. It was shown that the group policy was delivered in St. Louis to one Genovese, an officer of the Independent Movers' & Warehousemen's Association, who brought it back to this city; that defendant did not maintain an office or agent in the District of Columbia; that Genovese received no commission or compensation from defendant; that billings for premiums under the group policy were sent to his office and he, in turn, sent them to the participating members; that on receiving payment of premiums from members he deposited them in a special account, later mailing a check drawn on such account to defendant; and that defendant did indirectly solicit members of the association, through the association itself. It was also shown that the insurance company mailed an individual certificate of insurance to the insured Washington, as it did to others.

We rule that the facts mentioned in the preceding paragraph were sufficient to bring the defendant company within the scope of our statute—specifically, that clause which includes any company "writing insurance on any resident of the District, through the medium of the United States mails * * *". It is true that the ..

master policy was not sent by mail, as was the individual certificate issued to the insured, Washington. The insurance company in its brief says that the certificate was not a part of the policy but was "mere evidence of the insurance on the life of the insured," citing Boseman v. Connecticut Gen. Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036; Collier v. Metropolitan Life Ins. Co., D.C., 82 F.Supp. 529. Accepting the statement just quoted as accurate, we think the insurance company still cannot claim that it was beyond the scope of our statute. Even if coverage on the life of Washington was provided by the master policy, the individual certificate constituting "evidence of the insurance" on his life was transmitted to him "through the medium of the United States mails." Under any rule of statutory construction, we think it must be held that the defendant insurance company by sending insurance certificates through the mails into this jurisdiction must be held to be within the class or group made amenable by Congress to substituted service under the statute here applicable.

 Nothing in the statute is repugnant to the Due Process Clause. Without a doubt Congress, legislating for the District of Columbia, has the power to protect the interests of District residents for whom out of town companies write insurance policies. And, as is clear from more than one decision of the Supreme Court, such protective legislation is effective even though it may have repercussions beyond the geographical boundaries of the District. Travelers Health Association v. Commonwealth of Virginia At The Relation of The State Corporation Commission, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; citing Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074; Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 63 S.Ct. 602, 87 L.Ed. 777. If this were not so, the plaintiff in this case and all others similarly situated could not enforce their rights under their small policies, except by suing in Missouri. This oppressive alternative was expressly reject-

ed by the Supreme Court in the Travelers Health case, supra [339 U.S. 643, 70 S.Ct. 930]: "And prior decisions of this Court have referred to the unwisdom, unfairness and injustice of permitting policyholders to seek redress only in some distant state where the insurer is incorporated. The Due Process Clause does not forbid a state to protect its citizens from such injustice."

 Appellant also contends that it was entitled to a directed verdict because the policy had lapsed for late payment of premium. The insured died February 23, 1954. The January premium on his policy was paid February 8 of that year. Although the record is not entirely clear on the subject, a grace period of 31 days provided under the terms of the policy appears to have run out. But there was also evidence that the payment of February 8 (the January premium) was never returned by the insurer, nor was notice given that the policy had lapsed. Genovese testified that billings for premiums were sent to his office and he in turn sent them on to association members. An officer of the deceased's company said that the monthly premium billings reached his company at various times between the 1st and 25th of the month, and were paid to Genovese. There was also in evidence a letter sent by his company to the insurer on March 15, 1954, reading in part: "Our January premiums were mailed to Mr. Genovese on 8 February and the February premiums on 25 February. The reason for the delay was due to the fact we did not receive our bills on time. We would appreciate receipt of our bills prior to the due date so that our check may be mailed in sufficient time so as not to cause lapse of our policies." The witness also testified that on several earlier occasions there were similar delays in payments on the policy, with no notice of objection from the insurer. Subsequent premiums were apparently also accepted by the insurer.

Plainly, there was enough evidence to go to the jury. The retention of the late premium, failure to notify of lapse, several

earlier waivers of tardy payments, and the history of late billings, supported a verdict for plaintiff. "The essence of waiver of lapse for nonpayment of premium is a course of conduct on the part of the insurer which reasonably leads the insured to believe that lapse will not be exacted." Lamar v. Aetna Life Ins. Co., 10 Cir., 85 F.2d 141, 143, citing Globe Mutual Life Ins. Co. v. Wolff, 95 U.S. 326, 24 L.Ed. 387. It was for the jury to say whether a lapse, if it occurred, had been waived by the insurance company.

Affirmed.