Milton J. WEINSTEIN and Myron WEIN-STEIN, Appellants,

v.

AJAX DISTRIBUTING COMPANY, a New Jersey Corporation, Appellee.

No. 1661.

Municipal Court of Appeals for the District of Columbia.

Argued July 25, 1955.

Decided Aug. 26, 1955.

James T. Barbour, Jr., Washington, D. C., for appellants.

Evelyn N. Cooper, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

This appeal is from an order quashing service of process and vacating a default judgment. Appellants Weinstein had sued Ajax Distributing Company, a New Jersey corporation, charging that they had been induced by fraudulent misrepresentations to sign a contract and put up a deposit for the purchase of certain vending machines. The complaint which was filed in January 1955 demanded return of the deposit and also punitive damages. Service was made on Donald Chapman, as agent of defendant company on March 7, and though copies of the complaint and summons were in the hands of the president of defendant company on March 22, no answer or appearance was filed, and on March 29 plaintiff was granted a judgment by default.

A few days later defendant moved to set aside the default and to quash the service of process, the contention being that (a) defendant was not doing business in the District of Columbia and (b) Donald Chapman was not a person on whom process against the defendant could properly be served. After taking testimony on the motion the trial judge ruled in favor of

defendant on both contentions, vacated the default judgment, and quashed the service of process.

Milton Weinstein testified that responding to an advertisement he and his brother met a man named Nick G. Greene who identified himself as a "representative" of the Ajax Company, and after some discussion produced a printed form of contract prepared by that company and bearing its name in large type at the top; that the contract was then filled out, and called for sale to them by Ajax of 50 chewing gum vending machines and a supply of chewing gum for a total of $2,923, of which they were to pay half at signing and the other half at delivery; that the contract was signed by the Weinsteins and on behalf of Ajax by Greene as "Distributor"; that they gave Greene a check for $1,461.50, payable to the Ajax Company, and received from him a company-prepared "official receipt." These papers were in evidence, as was a letter from the company signed by its president four days later, acknowledging and accepting the contract "placed with our distributor, Mr. Nick G. Greene," and stating, "our location supervisor will contact you for the purpose of securing the locations as per terms of contract." There was also in evidence a letter from the company stating: "Please be advised that our Location Supervisor, Mr. D. Chapman, will be in Washington next week and will contact you upon his arrival." It was this Mr. Chapman who was served with process in the suit brought by the Weinsteins on the basis of fraudulent misrepresentation.

Defendant offered no evidence except the affidavits it had filed in support of the motion. The principal affidavit was that of defendant's president. (A second affidavit merely recited the general practice as to the status of a "location man.") The gist of the affidavit was that defendant was not doing business in the city of Washington; that it has never maintained a place of business here; that no one in the District of Columbia was authorized to accept service of process; that Greene was not an employee of the corporation, but an independent salesman; and that Chapman is not an officer, agent or employee, but an independent contractor. The affidavit stated, however, that Chapman was sent here to secure locations and arrange for the installation of the 50 machines.

■ The question we consider first is whether the defendant corporation can be said to have been "doing business" in this jurisdiction within the meaning of our Code 1951, § 13–103, which reads in part: "In actions against foreign corporations doing business in the District all process may be served on the agent of such corporation or person conducting its business * * *. When a foreign corporation shall transact business in the District without having any place of business or resident agent therein, service upon any officer or agent or employee of such corporation in the District shall be effectual as to suits growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia * * *." The question has been a much discussed and troublesome one. As in many other situations, the law on this subject has undergone an evolution. There has been a questioning and sometimes a discarding of old traditions. In earlier times the rule was that a non-resident defendant would not be subjected to our process unless it had been engaged in an established and continuing business activity here. This view was reflected in rulings that "mere solicitation" in the District did not confer jurisdiction on our courts. But this view later yielded to the "solicitation plus" test. Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 516, 146 A.L.R. 926. There the United States Court of Appeals, speaking through Rutledge, J., (later a member of the Supreme Court) pointed out that developments in the law had cast doubt on the validity of the old traditions, and that very little more than "mere solicitation" is required in order to establish that a corporation is present for jurisdictional purposes. In the course of the opinion it was said that while it was "generally" true that there should be more than merely casual or occasional acts not constituting a regular or continuous course of business, still "some casual or

even single acts done within the borders of the sovereignty may confer power to acquire jurisdiction of the person, provided there is also reasonable provision for giving notice of the suit in accordance with minimal due process requirements." Similar views were expressed in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. As was said in Mueller Brass Co. v. Alexander Milburn Co., 80 U.S.App.D.C. 274, 152 F.2d 142, 145, there is as yet no "basic concept of sufficient precision to yield certain results in all cases of this sort * * *." But we are satisfied that by any reasonable test it must be said that the Ajax Company made itself amenable to our jurisdiction. In Mr. Greene it had an authorized representative who was given power not only to solicit, but to negotiate and contract with businessmen here. It had supplied him with its printed form of contract and authorized him to sign as distributor; it had also authorized him to accept payment for its machines and to issue its form of official receipt. As was said in the Frene case, supra, 77 U.S.App. D.C. at page 134, 134 F.2d at page 516: "No business man would regard 'selling,' the 'taking of orders,' 'solicitation' as not 'doing business.' The merchant or manufacturer considers these things the heart of business. It is perfectly possible, under the 'mere solicitation' rule, for a foreign corporation to confine its entire market to a single jurisdiction, yet by carefully limiting its activities there to the soliciting phase, to force each of its customers having cause for legal redress to seek it in the foreign forum of incorporation."

Ajax did even more to establish the jurisdictional pattern. In a letter accepting plaintiffs' contract they said that "our location supervisor will contact you for the purpose of securing the locations as per terms of contract," and followed this with another letter identifying the supervisor as Mr. Chapman and announcing that he would be in Washington the following week. We think it cannot be said that this designation

was without meaning. We cannot agree with appellee that because a man like Chapman was paid on a fee basis rather than by salary, or because he also represented other clients, that he is not to be considered an agent of Ajax. His mission here was to complete the contractual obligations of Ajax and to secure locations for the machines sold to the Weinsteins. This was no casual or trifling project. It involved making contact and negotiating for the installation of 50 machines. Even if it could have been accomplished swiftly and easily, it still involved an important series of business transactions. Considering all the circumstances, we think it was wrong to conclude that Ajax was beyond the reach of our courts. As the Supreme Court said in International Shoe Co. v. State of Washington, supra, 326 U.S. at page 316, 66 S.Ct. at page 158: "* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "[1]

We recently invoked the same principle in construing a similar statute applying to non-resident insurance companies. We rejected the "oppressive alternative" of requiring residents of the District to travel into other jurisdictions to sue on claims against companies which were present here in a statutory or jurisdictional sense. Security National Life Insurance Co. v. Washington, D.C.Mun.App., 113 A.2d 749, appeal denied, D.C.Cir., 226 F.2d 251, citing Travelers Health Ass'n v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154. We reach the same conclusion in this case and hold that under Code 1951, § 13–103, defendant was subject to service of process.

■ Little need be said on the question as to whether process could properly be served on Chapman as an agent of defend-

1. See also, Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, a landmark decision in the development of statutes providing for service of process on non-resident motorists.

ant or as a "person conducting its business." As we have already seen, the record leaves no doubt that Chapman as location supervisor was here as agent or representative of defendant company and was conducting its business in the discharge of its contractual obligations. Service upon him gave reasonable assurance of notice to the corporation. See District Grocery Stores v. Brunswick Quick F. Co., D.C.Mun.App., 106 A.2d 134, and cases there cited. Under the circumstances, the motion to quash service should be overruled; and as was agreed in this court by counsel for appellant, the default should be set aside and defendant should be permitted to file an answer and have a trial on the merits.

Reversed.