David J. GORMAN, d/b/a
Cashbackrealty.com,
Appellant,

v.

AMERITRADE HOLDING CORPO-
RATION and Freetrade.com,
Inc., Appellees.

No. 01–7085.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 14, 2002.

Decided June 14, 2002.

John M. Shoreman argued the cause and filed the briefs for appellant.

Brian D. Craig argued the cause for appellees. With him on the brief was Robert S. Brennen.

Before: HENDERSON and GARLAND, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

GARLAND, Circuit Judge:

■ In this case, we consider whether the courts of the District of Columbia may assert general jurisdiction over a defendant that is "doing business" in the District through the medium of the Internet. We hold that they may, although we ultimately affirm dismissal of the complaint because service of process on the defendant was insufficient.

I

Plaintiff David Gorman is the sole proprietor of Cashbackrealty.com, a real estate broker with its principal place of business in McLean, Virginia. Defendant Ameritrade Holding Corporation is a securities broker-dealer licensed in the District of Columbia with its principal place of business in Omaha, Nebraska. Ameritrade provides online brokerage services through its Internet site to individuals across the country, including District residents. In November 1999, Ameritrade acquired Freetrade.com, Inc., as well as its Internet domain name, "Freetrade.com." Like Ameritrade, defendant Freetrade has its principal place of business in Omaha. Gorman alleges that he had an agreement with the prior owner of Freetrade, under which Cashbackrealty.com was entitled to a front-page link on the Freetrade.com website. According to Gorman, although Ameritrade assumed the obligations of this agreement when it acquired the Freetrade.com domain name, it refused to provide a front-page link for Cashbackrealty.com.

■ On June 2, 2000, Gorman filed a complaint in the United States District Court for the District of Columbia, alleging that Ameritrade and Freetrade (hereinafter referred to collectively as "Ameritrade") were in breach of contract for refusing to honor the front-page-link agreement. Without permitting discovery, the district court dismissed Gorman's complaint for lack of personal jur-

isdiction and insufficiency of service of process. With respect to personal jurisdiction, the court held that a "company that acts to encourage or maximize the use by District of Columbia residents of its website does not establish the necessary 'minimum contacts' with this forum through Internet accessibility," and does not "operate so continuously and substantially within [the District] that it is fair to allow anyone to sue the enterprise in [the District] on any claim, without regard to where the claim arose." *Gorman v. Ameritrade Holding Corp.*, No. 00–1259, Mem. Op. at 3 (D.D.C. Mar. 30, 2001) (internal quotation marks omitted). The court further held that Gorman's service of his complaint upon the Securities Director of the District of Columbia was insufficient under District of Columbia law. *Id.* at 2–3. We review the district court's grant of Ameritrade's motion to dismiss de novo, *see Second Amendment Found. v. United States Conference of Mayors*, 274 F.3d 521, 523 (D.C.Cir. 2001), and we consider its two grounds for dismissal in Parts II and III below.

## II

■ The district court has subject matter jurisdiction in this breach of contract action because of the diversity of citizenship of the parties. 28 U.S.C. § 1332(a). In a diversity case, the court's personal jurisdiction over nonresident defendants depends upon state law, here the law of the District of Columbia, the application of which is subject to the constraints of constitutional due process. *See Crane v. Carr*, 814 F.2d 758, 762 (D.C.Cir.1987); 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE

§ 1068.1, at 592 & n.2 (3d ed. 2002). The requirements of due process "are satisfied when *in personam* jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)) (additional internal quotation marks omitted).

■ Under the District of Columbia's long-arm statute, local courts may exercise so-called "specific jurisdiction" over a person for claims that arise from the person's "transacting any business" in the District. D.C.Code § 13–423(a)(1). *See generally Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 & n. 15, 105 S.Ct. 2174, 2182–83 & n. 15, 85 L.Ed.2d 528 (1985); *Crane*, 814 F.2d at 763. However, because Gorman's breach of contract claim against Ameritrade does not arise out of any business transacted between the parties in the District, this font of jurisdiction is unavailable.

■ District of Columbia law also permits courts to exercise "general jurisdiction" over a foreign corporation as to claims not arising from the corporation's conduct in the District, if the corporation is "doing business" in the District. *See* D.C.Code § 13–334(a); *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C.1981); *see also Helicopteros*, 466 U.S. at 415 n. 9, 104 S.Ct. at 1872 n. 9; *Crane*, 814 F.2d at 763.[1] Under the Due Process

---

1. D.C.Code § 13–334(a) provides:

    In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, where he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

Clause, such general jurisdiction over a foreign corporation is only permissible if the defendant's business contacts with the forum district are "continuous and systematic." *Helicopteros,* 466 U.S. at 415, 104 S.Ct. at 1872 (quoting *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 438, 72 S.Ct. 413, 96 L.Ed. 485 (1952)); *see El–Fadl v. Central Bank of Jordan,* 75 F.3d 668, 675 (D.C.Cir.1996); *see also Crane,* 814 F.2d at 763 (describing the required contacts for general jurisdiction as "continuous and substantial"); *Hughes v. A.H. Robins Co.,* 490 A.2d 1140, 1142, 1149 (D.C.1985) (same).[2] The District of Columbia Court of Appeals has indicated that the reach of "doing business" jurisdiction under § 13–334(a) is coextensive with the reach of constitutional due process. *See Hughes,* 490 A.2d at 1148 ("[W]e may find jurisdiction if [the defendant] ... has 'been carrying on in [the District] a continuous and systematic, but limited, part of its general business.'" (quoting *Perkins,* 342 U.S. at 438, 72 S.Ct. at 414)); *see also Everett v. Nissan Motor Corp.,* 628 A.2d 106, 108 (D.C.1993).

In his pleadings below, Gorman contended that Ameritrade "sells securities and provides other online brokerage services to residents of the District of Columbia on a continuous basis," and is therefore "continuously doing business in the District of Columbia." Pl.'s Opp'n to Mot. to Dismiss at 1–2. He further argued that he was "[a]t the very least ... entitled to jurisdictional discovery to determine the exact nature of Ameritrade's contacts with the District." *Id.* at 5. And although "[a]s a general matter, discovery ... should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction," *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 425 (D.C.Cir.1991), the district court granted Ameritrade's motion to dismiss without permitting the plaintiff to undertake discovery.

■ Ameritrade contends that Gorman was not entitled to discovery because there are no factual circumstances under which the district court could have asserted personal jurisdiction over Ameritrade. The defendant concedes that it engages in "electronic transactions" with District residents, and that "Ameritrade undoubtedly derives revenue from those customers." Reply Mem. in Supp. of Defs.' Mot. to Dismiss at 6. But Ameritrade maintains that those transactions do not occur in the District of Columbia. Rather, the firm declares, Ameritrade's business is conducted "in the borderless environment of cyberspace." Appellees' Br. at 5.

■ "Cyberspace," however, is not some mystical incantation capable of warding off the jurisdiction of courts built from bricks and mortar. Just as our traditional notions of personal jurisdiction have prov-

---

Although on its face § 13–334(a) appears only to specify proper methods of service, the District of Columbia Court of Appeals has held that compliance with the statute gives rise to personal jurisdiction over a foreign corporation doing business in the District. *AMAF Int'l Corp.,* 428 A.2d at 850; *see El–Fadl v. Central Bank of Jordan,* 75 F.3d 668, 673 n. 7 (D.C.Cir.1996).

**2.** *See generally Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 568 (2d Cir.1996) (declaring that "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test" than for specific jurisdiction); 4 WRIGHT & MILLER § 1067.5, at 499–507 (noting that, although "[s]pecific jurisdiction ... may be asserted when the defendant's forum contacts are isolated or sporadic, but the plaintiff's cause of action arises out of those contacts with the state," when "the cause of action sued on does not arise from the defendant's contacts with the forum state, an assertion of general jurisdiction must be predicated on contacts that are sufficiently continuous and systematic to justify haling the defendant into a court in that state").

en adaptable to other changes in the national economy,[3] so too are they adaptable to the transformations wrought by the Internet. In the last century, for example, courts held that, depending upon the circumstances, transactions by mail and telephone could be the basis for personal jurisdiction notwithstanding the defendant's lack of physical presence in the forum.[4] There is no logical reason why the same should not be true of transactions accomplished through the use of e-mail or interactive websites. Indeed, application of this precedent is quite natural since much communication over the Internet is still transmitted by ordinary telephone lines. See AT&T Corp. v. City of Portland, 216 F.3d 871, 874 (9th Cir.2000); Bell Atlantic Tel. Cos. v. FCC, 206 F.3d 1, 4 (D.C.Cir.

---

**3.** Cf. Burger King Corp., 471 U.S. at 476, 105 S.Ct. at 2184 (holding that specific jurisdiction "may not be avoided merely because the defendant did not physically enter the forum State," since "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted"); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292–93, 294, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (noting that the "limits imposed on state jurisdiction by the Due Process Clause ... have been substantially relaxed over the years ... largely attributable to a fundamental transformation in the American economy," and that " '[a]s technological progress has increased the flow of commerce between the States, the need for jurisdiction over nonresidents has undergone a similar increase' " (quoting Hanson v. Denckla, 357 U.S. 235, 250–51, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958))); McGee v. International Life Ins. Co., 355 U.S. 220, 222–23, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (noting a trend "expanding the permissible scope of state jurisdiction over foreign corporations ... [i]n part ... attributable to the fundamental transformation of our national economy over the years," including a "great increase in the amount of business conducted by mail across state lines").

**4.** See Metropolitan Life Ins. Co., 84 F.3d at 572 (noting that a defendant's mail-order sales to forum residents may satisfy the "continuous and systematic" standard (citing Sollinger v. Nasco Int'l, Inc., 655 F.Supp. 1385 (D.Vt.1987))); Michigan Nat'l Bank v. Quality Dinette, Inc., 888 F.2d 462, 466 (6th Cir.1989) (holding that, inter alia, appellees' "mail order solicitations of Michigan businesses," and the fact that they "made at least one sale in Michigan each and every month" for two years, "indicate that appellees have conducted a 'continuous and systematic part of their general business' in Michigan ... thereby warranting general personal jurisdiction"); cf. Quill Corp. v. North Dakota, 504 U.S. 298, 308, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (holding that "[i]n 'modern commercial life' it matters little that ... solicitation is accomplished by a deluge of catalogs rather than a phalanx of drummers," that the "requirements of due process are met irrespective of a corporation's lack of physical presence in the taxing State," and that due process therefore permits "the imposition of [a] collection duty on a mail-order house that is engaged in continuous and widespread solicitation of business within a State"); McGee, 355 U.S. at 223, 78 S.Ct. at 201 (basing a finding of specific jurisdiction on the mailing of an insurance contract into the state and the mailing of premiums from the state); Travelers Health Ass'n v. Virginia, 339 U.S. 643, 648, 70 S.Ct. 927, 94 L.Ed. 1154 (1950) (holding that an Omaha mail-order company, with no physical presence in Virginia, was subject to Virginia regulation because it "did not engage in mere isolated or short-lived transactions[;] [i]ts insurance certificates, systematically and widely delivered in Virginia ..., create continuing obligations between the Association and each of the many certificate holders in the state"); Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 892 (6th Cir.2002) (holding that a defendant's "contact with Michigan customers through the mail and the wires," where it "constitute[d] the doing of business there, rather than simply the exchange of information," rendered the assertion of specific jurisdiction consistent with due process); Neal v. Janssen, 270 F.3d 328, 332 (6th Cir.2001) (holding that "making phone calls and sending facsimiles into the forum" may be sufficient to confer specific jurisdiction); Oriental Trading Co. v. Firetti, 236 F.3d 938, 943 (8th Cir.2001) (same).

2000). Accordingly, the test that we will apply to determine whether the District has general personal jurisdiction in this case is the traditional one: Were Ameritrade's contacts with the District "continuous and systematic"? *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C.Cir.2000) ("We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction."); 4A WRIGHT & MILLER § 1073.1, at 327–28.

■ For support of its claim that Internet-based transactions are outside the jurisdiction of District of Columbia courts, Ameritrade relies on our decision in *GTE*. Ameritrade misreads the case. In *GTE*, we held that defendants who operated Internet Yellow Pages websites accessible to D.C. residents had insufficient contacts with the District to permit the exercise of specific jurisdiction under the District's long-arm statute. In reaching that conclusion, we emphasized that District residents did not engage in business transactions with the defendants. Rather, "[a]ccess to an Internet Yellow Page site is akin to searching a telephone book—the consumer pays nothing to use the search tool, and any resulting business transaction is between the consumer and a business found in the Yellow Pages, not between the consumer and the provider of the Yellow Pages." *GTE*, 199 F.3d at 1350. The "mere accessibility of the defendants' websites," we held, does not "establish[ ] the necessary 'minimum contacts' with this forum." *Id.*[5]

This case, however, is substantially different from *GTE*. Ameritrade's contact with the District is not limited to an "essentially passive" website through which customers merely access information about the financial markets. *GTE*, 199 F.3d at 1348; *see supra* note 5. To the contrary, Ameritrade concedes that District residents use its website to engage in electronic transactions with the firm. *See* Reply Mem. in Supp. of Defs.' Mot. to Dismiss at 6. The firm's customers can open Ameritrade brokerage accounts online; transmit funds to their accounts electronically; and use those accounts to buy and sell securities, to borrow from Ameritrade on margin, and to pay Ameritrade brokerage commissions and interest. Using e-mail and web-posting, Ameritrade transmits electronic confirmations, monthly account statements, and both financial and product information back to its customers. As a result of their electronic interactions, Am-

---

5. In *GTE*, we described Internet cases in which other courts of appeals had dismissed complaints for lack of specific jurisdiction as also involving "essentially passive" sites. *See GTE*, 199 F.3d at 1348 (describing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419–20 (9th Cir.1997), as finding that an Arizona court lacked personal jurisdiction over a Florida corporation where the corporation's website "was essentially passive," where the defendant did not encourage Arizona residents to access the site, and where there was no evidence that any part of the defendant's business was sought or achieved in Arizona or that any Arizona resident other than the plaintiff had ever visited the site); *id.* (citing *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 29 (2d Cir.1997), as holding that New York's long-arm statute did not extend to the operator of a Missouri jazz club whose website merely had a hyperlink to a New York club of the same name); *id.* (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999), as declining to find jurisdiction where the defendant's website was accessible to forum residents, but where "[t]here was no evidence that [the defendant] conducted business over the Internet by engaging in business transactions with forum residents or by entering into contracts over the Internet"); *see also Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir.1999) (holding that a "passive" website that merely makes information "available" is insufficient to confer general jurisdiction); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000) (same).

eritrade and its District of Columbia customers enter into binding contracts, the customers become the owners of valuable securities, and Ameritrade obtains valuable revenue.[6]

What may serve best to take the mystery out of the process—and to demonstrate that nothing about the Ameritrade website need alter our traditional approach to personal jurisdiction—is the fact that Ameritrade also offers its customers the alternative of accomplishing virtually all of the above-described transactions by ordinary mail or telephone.[7] Indeed, if anything, Ameritrade appears susceptible to application of the "doing business" test in a much more literal way than a traditional brokerage firm. Ameritrade's website allows it to engage in real-time transactions with District of Columbia residents while they sit at their home or office computers "in the District of Columbia." And by permitting such transactions to take place 24 hours a day,[8] the site makes it possible for Ameritrade to have contacts with the District of Columbia that are "continuous and systematic" to a degree that traditional foreign corporations can never even approach.

In short, on the record before this court, it is quite possible that, through its website, Ameritrade is doing business in the District of Columbia by continuously

and systematically "enter[ing] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997) (describing similar websites as ones where the defendant "clearly does business over the Internet," in the context of a case involving specific jurisdiction); *see Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir.1999) (adopting the *Zippo* test for assertions of general jurisdiction). Of course, determining whether Ameritrade is actually "doing business" in the District requires an examination of the frequency and volume of the firm's transactions with District residents. But those facts are unavailable because Gorman was not permitted to undertake discovery. Because the plaintiff has "demonstrate[d] that it can supplement its jurisdictional allegations through discovery, ... jurisdictional discovery is justified" and should have been afforded. *GTE*, 199 F.3d at 1351; *see El–Fadl*, 75 F.3d at 676; *Edmond*, 949 F.2d at 425; *Crane*, 814 F.2d at 760, 764. Accordingly, were it not for the conclusion of the following Part—that although dismissal on personal jurisdiction grounds was unwarranted, dismissal for insufficient service of process was justified—we would remand the case for jurisdictional discovery.[9]

6. *See* http://www.ameritrade.com/tell_me_more/tell_me_more.fhtml; http://www.ameritrade. com/getting_started/html/apply_online.html; http://www.ameritrade.com/getting_started/html/fund_account.html; http://www. ameritrade.com/getting_started/html/login. html; http:// www.ameritrade.com/getting_started/ forms/ ATL_845_F.pdf; http://www.ameritrade.com/getting_started/html/tc.html (form contract at ¶¶ 26, 37, 38).

7. *See* http://www.ameritrade.com/getting_started/html/ apply_online.html; http://www. ameritrade.com/getting_start-

ed/html/check.html; http://www.ameritrade.com /getting_started/html/login.html.

8. *See* http://www.ameritrade.com/services/ ways_trade.fhtml.

9. Because we affirm dismissal on other grounds, we need not consider whether, in general jurisdiction cases, due process requires not only that the defendant have "continuous and systematic" contacts with the forum, but also that the assertion of personal jurisdiction be "reasonable." *Compare Metropolitan Life Ins. Co.*, 84 F.3d at 567–69, *with id.* at 576–78 (Walker, J., dissenting).

## III

■ Even if there are sufficient contacts for a court to assert personal jurisdiction over a defendant, it lacks power to do so unless the procedural requirements of effective service of process are satisfied. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Federal Rule of Civil Procedure 4(h)(1) provides that a foreign corporation may be served

> in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Subdivision (e)(1), in turn, permits individuals to be served "pursuant to the law of the state in which the district court is located ... for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State." Gorman contends that he perfected service of process on Ameritrade in two ways that were consistent with Rule 4.

■ First, Gorman mailed a copy of the summons and complaint to Ameritrade's corporate headquarters in Omaha, Nebraska. The plaintiff argues that this manner of service was effective because it was "pursuant to the law of the state in which the district court is located." Fed. R.Civ.P. 4(e)(1). Although Rule 4(c)(4) of the D.C. Superior Court Rules of Civil Procedure does appear to permit service upon corporations by mail, the District of Columbia Court of Appeals has held that

"Rule 4's general prescription for service of process cannot replace the specific jurisdictional requirement of D.C.Code§ 13–334(a) that service be made in the District of Columbia." *Everett*, 628 A.2d at 108. Where the basis for obtaining jurisdiction over a foreign corporation is § 13–334(a), as it is here, a plaintiff who serves the corporation by mail outside the District is "foreclosed from benefitting from [the statute's] jurisdictional protection." *Id.*; *see Gowens v. Dyncorp*, 132 F.Supp.2d 38, 42 (D.D.C.2001) (following *Everett*).

■ Second, Gorman served the summons and complaint on the Securities Director of the Public Service Commission of the District of Columbia. This, he contends, constituted service upon an "agent authorized by appointment or by law to receive service of process," Fed.R.Civ.P. 4(h)(1), by virtue of D.C.Code § 2–2615(f). At the time Gorman filed his complaint, that D.C. Code section provided:

> Any applicant for a license under this chapter shall file with the Department ... an irrevocable consent appointing the Securities Director ... to receive service of any lawful process in any noncriminal suit ... against him ... which shall arise under this chapter. . . .[10]

Although Ameritrade did obtain a securities license in the District, close attention to the wording of § 2–2615(f) makes clear that it only requires Ameritrade's consent to receipt of service by the Securities Director in suits "which shall arise under this chapter." Because the referenced "chapter" includes only the securities laws, *see* D.C.Code §§ 2–2601 to –2619 (1981), and because Gorman's breach of contract complaint is unrelated to any securities transaction, the Director was not an agent

---

**10.** Section 2–2615 was subsequently recodified as § 3–3615, and then repealed. *See* Securities Act of 2000, § 804, 47 D.C. Reg. 7837, 7886.

"authorized by appointment or by law to receive service of process" in this case. Accordingly, delivering a copy of the complaint to the Director did not perfect service of process.

■ Gorman further contends that, even if § 2–2615(f) does not authorize the Securities Director to receive service of process in a case like this, service upon the Director was nonetheless consistent with District of Columbia case law and was therefore "pursuant to the law of the state in which the district court is located" under Federal Rule 4(e)(1). In support, Gorman cites District of Columbia cases that, he claims, stand for the proposition that "service upon a foreign corporation 'doing business' in D.C. is valid if it gives reasonable assurance that the defendant would be notified, *even if service is made upon an agent of the corporation otherwise not authorized to accept service*." Reply Br. at 4 (emphasis added).

Whether or not the above proposition is generally a fair statement of District of Columbia case law, none of the cases cited by Gorman suggests that it is applicable here. The principal case upon which he relies, *Key v. S.C. Johnson & Son, Inc.*, 189 A.2d 361 (D.C.1963), does not even support the general proposition. In *Key*, the D.C. Court of Appeals did hold that service of process in a private products liability case was perfected by delivery of a complaint to the defendant's "government liaison officer," located in the District, who dealt solely with government officials. 189 A.2d at 362. But the opinion is silent as to whether the liaison officer was authorized to receive service of process for the company. Similarly inapposite is *Weinstein v. Ajax Distributing Co.*, 116 A.2d 580 (D.C. 1955), in which the court held that process was properly served on a foreign corporation's "location supervisor" when he was present in the District. The court did not hold that such service was permissible re-

gardless of whether the supervisor was authorized to accept it; rather, the court rejected the defendant's claim that the location supervisor was unauthorized and found that the record left "no doubt" that he was present in the District "as agent or representative of defendant company and was conducting its business." 116 A.2d at 583; *see id.* at 582.

Gorman's best case is *District Grocery Stores, Inc. v. Brunswick Quick Freeze Co.*, 106 A.2d 134 (D.C.1954), where, in the course of holding that service had been validly made, the Court of Appeals said that "we need not here be concerned with the precise character of the relationship between" the company and the person upon whom process was served. 106 A.2d at 135. Indeed, the court declared that "[w]hether, then, the person served with process may be regarded as the agent of the defendant corporation is, in our view, immaterial." *Id.* (internal alterations and quotation marks omitted). But the scope of the recipient's agency was immaterial in *District Grocery Stores* because it was clear that he "was, at least, conducting the business which . . . the defendant was doing in the District of Columbia." *Id.* (internal quotation marks omitted). And as the court emphasized, the District's "doing business" statute expressly authorizes service upon a foreign corporation's "agent . . . or *person conducting its business*." *Id.* (quoting D.C.Code § 13–103, the predecessor of the current § 13–334); *see supra* note 1.

In this case, however, it is clear that the recipient of service, the Securities Director of the District of Columbia, is not a person "conducting [the] business" of Ameritrade in the District. Nor is he otherwise a company employee or agent whose authority the company may or may not have circumscribed. Rather, the Securities Director is a government official whose au-

thority to receive service of process on behalf of Ameritrade is created by, and expressly limited by, the D.C. Code. *See* D.C.Code § 2–2615(f). This court is without power to extend that authority beyond the scope granted by the statute, and no District of Columbia court has ever found service upon such an unauthorized official to be valid against a foreign corporation. Accordingly, we conclude that service upon the Director was ineffective to bring Ameritrade within the jurisdiction of the district court.

Finally, Gorman urges that it would be unfair if a foreign corporation, lawfully subject to the jurisdiction of the District of Columbia because it does business here, could evade that jurisdiction by keeping its agents out of the District and hence beyond the range of effective service of process. If such a loophole does exist, the legislature can, of course, remove it by amending § 13–334 to provide an alternative method of service. But we are not at all certain that legislative action is required. Section 29–101.99(e)(2) of the D.C.Code, cited by neither party, provides that "[w]henever any foreign corporation does not have an agent for service of process ... the Mayor shall be the agent for service of process for the corporation."[11] Although on its face this section appears to close the loophole identified by Gorman, we need not determine whether service upon the Mayor would have been sufficient to bring Ameritrade within the jurisdiction of the district court because Gorman never attempted to make such service.

## IV

■ Ameritrade is quite wrong in treating "cyberspace" as if it were a kingdom floating in the mysterious ether, im-

mune from the jurisdiction of earthly courts. Nevertheless, in this case Ameritrade is saved from the jurisdiction of the district court by a much more mundane problem: the plaintiff simply failed to serve the corporation properly. For that reason, and for that reason alone, the judgment of the district court is

*Affirmed.*

---

**11.** The section further provides that "[i]n the event of service to the Mayor, the Mayor shall immediately cause one of the copies to be forwarded by certified or registered mail, addressed to the foreign corporation at its principal office or at its last known address." D.C.Code § 29–101.99(e)(2); *see also id.* § 29–101.108.