# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 19, 2020        Decided January 19, 2021

No. 19-7034

MARY ERWIN-SIMPSON AND KEVIN SIMPSON,
APPELLANTS

v.

AIRASIA BERHAD AND AIRASIA X BERHAD,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-00083)

———

*Amanda C. Dure* argued the cause and filed the briefs for appellants. *Doug P. Desjardins* entered an appearance.

*Cynthia Cook Robertson* argued the cause for appellees. With her on the brief was *Kevin M. Fong*.

Before: SRINIVASAN, *Chief Judge*, and HENDERSON and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

2

PILLARD, *Circuit Judge*: Mary Erwin-Simpson, a resident of the District of Columbia, sued Malaysia-based airline AirAsia in the District of Columbia for injuries sustained on a 2016 flight from Malaysia to Cambodia. She brought her claims under the Montreal Convention, a multilateral treaty ratified by the United States that governs airlines' liability to passengers. The district court dismissed the case for lack of both subject matter jurisdiction and personal jurisdiction. We affirm on the latter ground. The injuries Erwin-Simpson alleged did not arise from any activity by AirAsia in the District of Columbia, and the only presence that the airline identifies here is its website. The website on its own is insufficient to render the corporation subject to suit in the District.

## BACKGROUND

Mary Erwin-Simpson alleges that she suffered injuries in March 2016 on a flight from Malaysia to Cambodia with Malaysia-based airline AirAsia Berhad (AirAsia) when a flight attendant spilled boiling water on her. She and her husband Kevin Simpson, both D.C. residents, sued AirAsia and its affiliate AirAsia X Berhad (AirAsia X), also a Malaysia-based airline, in the U.S. District Court for the District of Columbia, claiming damages for personal injury and loss of consortium. They sued under the Montreal Convention, a treaty to which the United States is signatory that provides for airline liability in the case of injuries that occur during flight. *See* Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45 (Montreal Convention).

AirAsia and AirAsia X are separate corporate entities. AirAsia is a low-cost airline that provides service across Asia; it does not operate any flights to or from the United States.

AirAsia X is a low-cost, long-haul airline that operates within and outside Asia.  Until 2017, when it began limited service to and from Hawaii, AirAsia X, too, lacked any U.S. flights.

After the plaintiffs filed suit, AirAsia and AirAsia X moved to dismiss for lack of subject matter jurisdiction and personal jurisdiction.  The district court granted the motion.  It first held that it lacked subject matter jurisdiction over the claims that the plaintiffs asserted under the Montreal Convention.  A district court has federal question jurisdiction over claims that arise under treaties.  The plaintiffs contended that the court had jurisdiction under Article 17 of the Montreal Convention, which provides that "[t]he carrier is liable for damage sustained in case of death or bodily injury of a passenger" on board its aircraft.  Montreal Convention art. 17(1).  But the district court interpreted "carrier" in Article 17 as limited to the airline operating the particular aircraft carrying the passenger when the injury occurred, relying on this court's precedent interpreting a similar provision in the Warsaw Convention, the Montreal Convention's predecessor treaty.  *See Kapar v. Kuwait Airways Corp.*, 845 F.2d 1100, 1103 (D.C. Cir. 1988).  Because AirAsia X was not the carrier operating the flight on which Erwin-Simpson was injured, the district court held that it lacked subject matter jurisdiction over claims asserted against that airline.

As to AirAsia, the district court looked to Article 33 of the Montreal Convention, which identifies the forums in which an injured passenger may bring an action for damages, including the airline's domicile and principal place of business and the place of destination.  The claimed basis for jurisdiction here was Article 33(2), which allows an action to be brought in a forum (1) in which the injured passenger resides, (2) "to or from which the carrier operates services . . . either on its own aircraft, or on another carrier's aircraft pursuant to a

commercial agreement," and (3) "in which that carrier conducts its business . . . from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement." Montreal Convention art. 33(2). Recognizing a lack of any precedent interpreting this provision, the district court relied on text and drafting history to conclude that the third clause requires that the carrier conduct business through a physical presence in the forum. Because AirAsia maintains no such presence in the United States, the court held that it lacked subject matter jurisdiction over the damages claim against AirAsia. It also dismissed the loss of consortium claim on the ground that the court's jurisdiction over it was dependent on its power to decide the predicate personal injury claim.

Given that Article 33(2)'s meaning was a question of first impression, the district court proceeded to consider AirAsia's alternative ground for dismissal—lack of personal jurisdiction. In their opposition to the motion to dismiss, the plaintiffs did not identify any statutory basis for personal jurisdiction in the District of Columbia or assert that the court had specific jurisdiction over AirAsia. They instead limited their argument to whether the court might be able to exercise general jurisdiction over AirAsia on account of business the airline does with D.C. residents through its website. As support, they cited our precedent holding that a corporation's website "can satisfy general jurisdiction requirements" as a statutory and constitutional matter if the website is both "interactive" and used by D.C. residents in "a continuous and systematic way." *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1092 (D.C. Cir. 2008) (quoting *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 511-12 (D.C. Cir. 2002) (internal quotation marks omitted)). To determine whether the requirement of continuous and systematic use was met in this case, the plaintiffs requested jurisdictional discovery to determine the

frequency and volume of AirAsia's contacts with the District of Columbia through its website. Presumably because our precedent recognized that the provision of the D.C. statute authorizing personal jurisdiction over defendants "doing business" in the District reaches as far as the Constitution permits, *see FC Inv. Grp.*, 529 F.3d at 1092, the plaintiffs did not specify whether their arguments were statutory or constitutional.

The district court denied the plaintiffs' request for discovery and held that it lacked personal jurisdiction over AirAsia. The court concluded that the reasoning underlying this court's precedent had been abrogated by intervening Supreme Court decisions that hold that the constitutionality of an assertion of general jurisdiction over a foreign corporation depends on proof of corporate contacts with the state that are "so continuous and systematic as to render [the corporation] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted)). Because the plaintiffs offered no explanation as to how AirAsia's contacts through its website alone could render the corporation at home in the District of Columbia, the court deemed jurisdictional discovery unjustified.

The district court also denied the plaintiffs' alternative request to transfer the case to the District of Hawaii. They argued that AirAsia X's flights to and from Hawaii could establish general jurisdiction in the forum, but the court held that the lack of subject matter jurisdiction over the claims against AirAsia X precluded transfer.

## DISCUSSION

On appeal, the plaintiffs concede that the district court lacked subject matter jurisdiction over claims against AirAsia X, leaving at issue only their claims against AirAsia. As to those latter claims, we typically would assess subject matter jurisdiction before personal jurisdiction. But a court "does not abuse its discretion by turning directly to personal jurisdiction" when it "has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999); *see also Forras v. Rauf*, 812 F.3d 1102, 1105 (D.C. Cir. 2016). As the district court appreciated, such is the case here: No federal court has interpreted Article 33(2)'s requirement of presence in a forum state, and an examination of the Montreal Convention's text and drafting history makes for a complicated inquiry. The question of personal jurisdiction, on the other hand, turns out to be relatively straightforward. We thus begin and end there.

### A. Personal Jurisdiction

We review the district court's dismissal for lack of personal jurisdiction *de novo* and its denial of jurisdictional discovery for abuse of discretion. *See Livnat v. Palestinian Auth.*, 851 F.3d 45, 48 (D.C. Cir. 2017). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler*, 571 U.S. at 125 (citing Fed. R. Civ. P. 4(k)(1)(A)). "The plaintiffs have the burden of establishing the court's personal jurisdiction" over the defendant. *FC Inv. Grp.*, 529 F.3d at 1091.

The Supreme Court has developed two distinct analyses of the circumstances in which a forum state may, consistent with due process, authorize its courts to exercise contact-based

personal jurisdiction over a defendant. *See Livnat*, 851 F.3d at 56. The first, specific jurisdiction, "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (alteration in original) (citation and internal quotation marks omitted). The plaintiffs do not claim any statutory basis for specific jurisdiction here, and there are no facts to suggest the injury alleged relates to or arises from any AirAsia contacts with the District of Columbia.

The second type of contacts-based personal jurisdiction, general jurisdiction, "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Livnat*, 851 F.3d at 56 (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)). Two District of Columbia statutes provide for general jurisdiction.

Under D.C. Code § 13-422, a D.C. court can exercise jurisdiction "over a person domiciled in, organized under the laws of, or maintaining his[, her,] or its principal place of business in, the District of Columbia," without limitation to claims arising from or related to the plaintiff's D.C. domicile, incorporation, or principal place of business.

Under section 13-334(a)—a service of process statute that D.C. courts have interpreted to confer personal jurisdiction—a D.C. court can exercise jurisdiction over a foreign corporation "doing business in the District." *See Gonzalez v. Internacional De Elevadores, S.A.*, 891 A.2d 227, 233 (D.C. 2006). To establish jurisdiction under section 13-334(a), a plaintiff must serve the defendant corporation in the District of Columbia. *Id. See generally Burnham v. Superior Court*, 495 U.S. 604, 610-15 (1990) (plurality opinion).

The plaintiffs have failed to cite any statutory basis for their assertion of general jurisdiction. But the defendant, a Malaysian corporation without a principal place of business in the District, clearly does not meet the conditions of section 13-422. The only D.C. statute potentially supporting general jurisdiction in this case is thus section 13-334(a), the "doing business" provision, which was the basis addressed in our precedent on which the plaintiffs relied. *See FC Inv. Grp.*, 529 F.3d at 1091; *Gorman*, 293 F.3d at 509-10; *see also El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 672-75 (D.C. Cir. 1996) (accepting argument that defendant "has been doing business in the District of Columbia" as invoking section 13-334(a) despite plaintiff's failure to cite it), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010).[1]

---

[1] "For a claim that arises under federal law," as a claim under the Montreal Convention does, proper service of summons by a plaintiff, even outside the forum state or the United States, establishes personal jurisdiction in the forum state if (1) "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and (2) "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2); *see also Mwani v. bin Laden*, 417 F.3d 1, 10 (D.C. Cir. 2005). The plaintiffs forfeited Rule 4(k)(2) as a basis for personal jurisdiction by failing to raise it before the district court or on appeal. *See Herero People's Reparations Corp. v. Deutsche Bank, A.G.*, 370 F.3d 1192, 1196 (D.C. Cir. 2004); *cf. Mwani*, 417 F.3d at 11 n.10 (excusing plaintiffs' failure to explicitly mention Rule 4(k)(2) where, unlike here, they cited Rule 4 and made an argument based on "national contacts personal jurisdiction"). They also forfeited a consent-based personal jurisdiction argument—that an airline consents to personal jurisdiction in any of the Article 33 forums when it operates in a signatory state to the Montreal Convention—because their counsel raised it for the first time at oral argument. Oral Arg. Rec. 3:18-4:07, 6:37-7:34; *see Napleton 1050, Inc. v. NLRB*, 976 F.3d 30, 50 (D.C. Cir. 2020).

"The D.C. Court of Appeals has indicated that the reach of 'doing business' jurisdiction under § 13-334(a) is co-extensive with the reach of constitutional due process." *FC Inv. Grp*., 529 F.3d at 1092 (citation and internal quotation marks omitted). The Constitution permits a court to exercise general jurisdiction over a foreign corporation "when [its] affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). To be "essentially at home" in a state means to be "comparable to a domestic enterprise in that State." *Daimler*, 571 U.S. at 133 n.11. The paradigm forums that meet this standard are a corporation's place of incorporation and its principal place of business. *Id.* at 137. But the Supreme Court has also recognized "the possibility that in an exceptional case" another forum would qualify; provided other constitutional criteria were met, a forum could exercise general personal jurisdiction over a party whose contacts with the forum were "so substantial and of such a nature as to render [the party] at home in that State." *Id.* at 139 n.19.

AirAsia is not subject to general jurisdiction in the District for two independent reasons. First, the plaintiffs appear to have failed to satisfy section 13–334(a)'s service of process requirements. The district court did not address this issue because it did not consider the statutory basis behind the plaintiffs' assertion of general jurisdiction. But the record shows that the plaintiffs did not serve AirAsia in the District of Columbia, as required by section 13–334(a). Instead, they mailed copies of the summons and complaint to the defendant in Malaysia. *See* Return of Service/Affidavit, *Erwin-Simpson v. AirAsia Berhad*, No. 18-cv-83 (D.D.C. Mar. 29, 2018), ECF No. 7. "Where the basis for obtaining jurisdiction over a foreign corporation is § 13–334(a) . . . a plaintiff who serves the corporation by mail outside the District is 'foreclosed from

benefitting from [the statute's] jurisdictional protection.'" *Gorman*, 293 F.3d at 514 (alteration in original) (quoting *Everett v. Nissan Motor Corp.*, 628 A.2d 106, 108 (D.C. 1993)).

Second, the exercise of general jurisdiction over AirAsia fails as a matter of due process. As an initial matter, we note that personal jurisdiction objections are forfeited if not asserted, and neither defendant raised a statutory objection to personal jurisdiction under section 13-334(a). They never pointed out, for example, that they were not served within the District as would be required for an assertion of general personal jurisdiction under the statute. *Cf. Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 453-54 (D.C. Cir. 1990) (holding that defendant waived a constitutional objection to personal jurisdiction where it raised only a statutory objection before the district court). Because section 13-334(a)'s requirement of service within the District was not litigated, we consider the constitutional component of personal jurisdiction on which the parties consistently focused and the district court ruled: whether AirAsia's contacts are so substantial and of such a nature as to support general personal jurisdiction over AirAsia in the District of Columbia.

There is no basis on which to conclude AirAsia's contacts are "so continuous and systematic as to render [it] essentially at home" in the District. *Daimler*, 571 U.S. at 139 (alteration in original) (citation and internal quotation marks omitted). The airline operates no flights to the District and has no physical presence in the forum. The only presence that it identifies in the District is a website that is insufficient on its own to render the airline "comparable to a domestic enterprise" in the forum. *Id.* at 133 n.11. The plaintiffs focus on the fact that D.C. residents can find and purchase tickets on AirAsia's website, arguing that such activity could support general

jurisdiction if it were sufficiently voluminous. They accordingly contend the district court should have granted jurisdictional discovery into the extent and nature of such transactions before dismissing for lack of personal jurisdiction. But they do not identify any reason to think that use of AirAsia's website in the District would itself amount to forum contact so substantial and of such a nature as to effectively make AirAsia at home in the District of Columbia.

It is true that we have twice before held that a court might be able to assert general jurisdiction over a nonresident corporation on account of its in-forum online business alone. *See FC Inv. Grp.*, 529 F.3d at 1091-93; *Gorman*, 293 F.3d at 509-13. In *Gorman*, we permitted jurisdictional discovery into the "frequency and volume" of an online broker's internet business transactions with D.C. residents to determine whether those contacts could support general jurisdiction. 293 F.3d at 513. And in *FC Investment Group*, we said that there are "certain circumstances" under which "a foreign corporation's maintenance of a website that is accessible in the District can satisfy general jurisdictional requirements," though we went on to hold that that the "single District customer" the record in that case reflected was insufficient to support general jurisdiction or justify discovery seeking such support. 529 F.3d at 1092-93. Applying the standard established by these cases to the facts at hand might suggest that AirAsia's website alone could be sufficient to support general jurisdiction—or, at the very least, to justify jurisdictional discovery.

As the district court correctly held, however, the reasoning underlying our precedent has been eroded by intervening Supreme Court decisions. Our precedent asked simply whether the online business transactions between a foreign corporation and D.C. residents were "continuous and systematic," following the way the Supreme Court's sparse precedent on

general jurisdiction had hitherto described its minimum requirements. *See Helicopteros Nacionales de Colombia, S.A. v. Hill*, 466 U.S. 408, 415-16 (1984); *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 445-46 (1952). Since then, *Daimler* and *Goodyear* have clarified that the proper inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,'" but rather whether the contacts "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 138-39 (alteration in original) (quoting *Goodyear*, 564 U.S. at 919). Because *Gorman* and *FC Investment Group* set a lower bar, we overrule our precedent on that point as inconsistent with *Daimler* and *Goodyear*.[2]

This holding does not preclude the possibility that, under the facts of some future case, a corporation's online contacts could support general jurisdiction. *Cf. Kuan Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 57 (1st Cir. 2020) (reserving "the possibility that a corporation's pervasive virtual presence in a forum may be the linchpin for a finding that its business

---

[2] Generally, a panel decision can be overruled only through *en banc* review. But in cases that do not warrant the heavy administrative burdens of *en banc* review, we have long recognized a panel can instead seek the endorsement of the full court for its decision, announcing that endorsement in a footnote of the panel decision. *See Irons v. Diamond*, 670 F.2d 265, 268 n.11 (D.C. Cir. 1981); Policy Statement on En Banc Endorsement of Panel Decisions 1 (Jan. 17, 1996). One type of case in which an *Irons* footnote is appropriate is a decision "overruling a . . . precedent which, due to an intervening Supreme Court decision . . . , a panel is convinced is clearly an incorrect statement of current law." Policy Statement 2-3. Because this is just such a case, "this opinion has been circulated to and approved by all of the active members of the court, and thus constitutes the law of the circuit." *Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*, 891 F.3d 1041, 1052 n.* (D.C. Cir. 2018). (Judge Garland did not participate in this matter.)

contacts are so continuous and systematic as to render it at home in the forum"). We hold only that, for online contacts alone to be enough, they would need to render the corporation "essentially at home" in the District, *see id.* at 57-58, and that no facts alleged about AirAsia's website or its use plausibly suggest that this could be such a case. Because "we do not see what facts additional discovery could produce that would affect our jurisdictional analysis," the district court did not abuse its discretion in dismissing the case without granting discovery. *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994); *see also Daimler*, 571 U.S. at 139 n.20 ("[I]t is hard to see why much in the way of discovery would be needed to determine where a corporation is at home.").

## B. Request to Transfer

The plaintiffs also challenge the district court's denial of their alternative request to transfer this case to the District of Hawaii. They sought transfer under 28 U.S.C. § 1406, which permits a district court to either dismiss a case "laying venue in the wrong division or district" or to transfer it to a court "in which it could have been brought" if doing so would "be in the interest of justice." They argue the case could have been brought in the District of Hawaii because, even if AirAsia's contacts with the District of Columbia were insufficient to support general jurisdiction, its contacts with Hawaii could. And, on appeal, they claim that transfer in this case would be in the interest of justice because, if their claims here are dismissed, any re-filing in Hawaii would be time-barred by the Montreal Convention's two-year statute of limitations.

We hold that the district court did not abuse its discretion in denying plaintiffs' request to transfer this case to the District of Hawaii. *See McFarlane v. Esquire Mag.*, 74 F.3d 1296, 1301 (D.C. Cir. 1996). The contacts on which the plaintiffs

relied to support personal jurisdiction in arguing for transfer to Hawaii were those of AirAsia X. But the district court correctly recognized it had no authority to transfer claims against AirAsia X, over which it lacked subject matter jurisdiction. Assuming that the federal courts had subject matter jurisdiction over the claims against AirAsia, the district court's lack of personal jurisdiction would not render our district court powerless to transfer those claims. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983). But transfer would be permissible only if the district court could determine that the District of Hawaii likely would have personal jurisdiction over AirAsia. *See Sharp Elecs. Corp. v. Hayman Cash Reg. Co.*, 655 F.2d 1228, 1230 (D.C. Cir. 1981); *see also Sinclair v. Kleindienst*, 711 F.2d 291, 294 (D.C. Cir. 1983).

Given that AirAsia has no contacts with Hawaii apart from its website, the airline is no more at home in that forum than it is in the District of Columbia. It is unlikely that AirAsia X's added contact with Hawaii—a flight it operates between Honolulu and Malaysia—would support general jurisdiction even if that contact could be imputed to AirAsia. *See Daimler*, 571 U.S. at 136 ("[S]ubject[ing] foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate . . . would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*." (citation omitted)). Because the District of Hawaii is not a district "in which [the action] could have been brought" against AirAsia under 28 U.S.C. § 1406, we need not consider the plaintiffs' claim that the transfer would have been in the interest of justice. *See Hoffman v. Blaski*, 363 U.S. 335, 342-44 (1960) (interpreting similar language in 28 U.S.C. § 1404).

15

\* \* \*

For the foregoing reasons, we affirm the district court's dismissal on the ground that it lacked personal jurisdiction over AirAsia.

*So ordered.*