RULING DENYING MOTION TO DISMISS AND GRANTING MOTION TO TRANSFER VENUE
 

 LONGSTAFF, Chief Judge.
 

 This is a case of trademark infringement and unfair competition under the Lanham
 
 *MCLXIX
 
 Act, 15 U.S.C. § 1051 et seq., involving the marketing and sale of designer jewelry. Plaintiff Gail D. Lindgren (“Lindgren”), doing business as Moonbeams, initiated this action in this Court against defendant GDT, LLC (“GDT”) seeking legal and equitable relief from GDT’s use of the mark “JEAN JEWEL” in connection with its sales of jewelry for jeans. Lindgren designs and markets jewelry for jeans under the trademark “JEANJANGLES.” GDT moves to dismiss the action for lack of personal jurisdiction and improper venue. Absent dismissal, GDT requests a transfer to the United States District Court for the Central District of California, Western Division. Lindgren resists both motions.
 

 Neither party seeks an evidentiary hearing on the motion. When the court does not hold an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, but instead relies only on the pleadings, affidavits, and exhibits, jurisdiction need not be proven by a preponderance of the evidence.
 
 Dakota Indus. v. Dakota Sportswear, Inc.,
 
 946 F.2d 1384, 1387 (8th Cir.1991). The non-moving party need only make a prima facie showing of jurisdiction, and the court “must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party.”
 
 Id.
 
 (citations omitted). If personal jurisdiction exists at the commencement of the action, then venue is proper under 28 U.S.C. § 1391(b).
 
 Id.
 
 at 1392.
 

 BACKGROUND
 

 Plaintiff Lindgren, a resident of West Des Moines, Iowa, began designing and selling jewelry in approximately 1986. Her sales were primarily in Iowa from her principal place of business in West Des Moines. On or about March 3, 1997, Lind-gren began using the trademark JEAN-JANGLES in connection with her new line of jewelry for jeans. On March 21, 2000 she registered the mark with the United States Patent and Trademark Office as Registration No. 2,332,348. The jewelry is designed to hang from the belt loop, and is made from sterling silver or gold-filled wire, with pieces incorporating such items as gold nuggets, glass or abalone. Prices range from $18 to $58. JEANJANGLES may be purchased from Lindgren’s Web site, www.jeanjangle.com, or from Teacups and Tiaras in West Des Moines, Iowa, and its online store.
 

 Defendant GDT is a California limited liability company that manufactures and sells JEAN JEWEL “Jewels for the Hip”, jewelry designed to hang from the belt loop on a fastened chain. GDT filed a trademark application for JEAN JEWEL on May 21, 2002. The jewelry is made from sterling silver or gold and may contain semi-precious stones or glass. Prices range from $55 to $835. GDT maintains a Web site, www.jeanjewel.com, which began selling JEAN JEWEL merchandise on or about June 6, 2003. From GDT’s Web site, consumers can create a personal JEAN JEWEL account, browse product offerings, place orders, and have the product shipped to them anywhere in the world, including Iowa. An online order will be delivered by FedEx and “will arrive within 1-3 days after it is shipped anywhere in the continental U.S.. ” JEAN JEWEL merchandise is also available at foreign and domestic retail outlets, although not in Iowa.
 

 GDT’s principal place of business is Pacific Palisades, California. Member units of GDT are owned by 2Cool Corporation (a California corporation owned by Daniel Hoffman and Carrie Pollare) (50%), Wendy Thorlakson (25%), and David Krieff (25%). All of the above individuals are residents of California; none have traveled to Iowa on behalf of GDT, and 2Cool corporation has no prior contacts with Iowa.
 
 *MCLXX
 
 GDT does not have, and never has had in Iowa:
 

 1. A registered agent for service
 

 2. Offices or bank accounts
 

 3. Employees
 

 4. Real property
 

 5. Production facilities
 

 Prior to initiation of this action, no JEAN JEWEL products had been sold to Iowa residents. Between Lindgren’s filing of this suit on July 10, 2003, and December 8, 2003, two sales for a total of $226.25 were made to Iowa residents via GDT’s Web site. These sales represented less than two-tenths of one percent (.002%) of GDT’s total sales revenue. As of GDT’s reply brief of January 12, 2003, GDT’s Web site produced one additional sale to Iowa. The current record shows these three sales to constitute GDT’s sole contractual relations with any person or entity in Iowa. GDT claims that it first became aware of Lindgren and her company, Moonbeams, when it received a letter from Lindgren’s counsel on June 30, 2003.
 

 DISPUTE
 

 Lindgren was alerted to GDT’s use of the JEAN JANGLE mark after an article featuring GDT’s products appeared in the June 23, 2003 issue of
 
 People
 
 Magazine. Lindgren thereafter received phone calls congratulating her on the national press. Upon inquiry she learned the callers had seen the
 
 People
 
 article on GDT’s products. On June 30, 2003, Lindgren’s counsel sent the above-mentioned letter notifying GDT of her claims of infringement and unfair competition and demanding that GDT cease use of the JEAN JEWEL mark. GDT refused Lindgren’s demands, and she filed this action on July 10, 2003.
 

 On August 19, 2003, a reference to GDT’s product was made by Lance Bass, a member of the pop group N’Sync, and a celebrity guest on “Valentine in the Morning”, a nationally syndicated radio talk show. Thereafter, Lindgren spoke with a caller who attributed the reference to Lindgren’s JEAN JANGLES products. Lindgren contacted the local carrier of the program, WHO radio in Des Moines, Iowa, in hopes of obtaining a record of the program. WHO informed her that no copy was available, but she could find the product at www.jeanjewel.com.
 

 Alleging trademark infringement and unfair competition, Lindgren now seeks injunctive relief barring GDT from using the name JEAN JEWEL or any similar mark in connection with the sale or advertisement of jewelry; an award of actual damages including without limitation GDT’s profits and Lindgren’s loss of profits due to GDT’s use of the mark JEAN JEWEL; an order mandating the destruction of all of GDT’s products and product literature featuring the JEAN JEWEL mark; a finding that GDT’s actions were willful and/or in bad faith, entitling Lind-gren to enhanced damages including trebled actual damages, costs, and attorney’s fees; pre-litigation and pre-award interest on all damages at the maximum legally allowable rate of interest; and any such other relief as the Court deems just and reasonable. GDT moves to dismiss on personal jurisdiction and venue grounds. Absent dismissal, GDT requests a transfer to the United States District Court for the Central District of California, Western Division.
 

 DISCUSSION
 

 Courts may exercise either general or specific personal jurisdiction over defendants.
 
 Bell Paper Box, Inc. v. U.S. Kids, Inc.,
 
 22 F.3d 816, 819 (8th Cir.1994). “Specific” jurisdiction refers to the situation in which the cause of action arises out of or relates to the defendant’s contacts with the forum. It contrasts with “general” jurisdiction, in which the defendant’s
 
 *MCLXXI
 
 contacts have no necessary relationship to the cause of action.
 
 Beverly Hills Fan Co. v. Royal Sovereign Corp.,
 
 21 F.3d 1558, 1563 n. 10 (Fed.Cir.1994) (citing
 
 Burger King v. Rudzewicz,
 
 471 U.S. 462, 473 n. 15, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Lindgren’s claims of trademark infringement and unfair competition arise out of or relate to GDT’s use of the JEAN JEWEL mark and its impact on Iowa consumers and Lindgren’s business. Specific personal jurisdiction analysis is therefore appropriate.
 

 In analyzing personal jurisdiction, the Court first examines whether the exercise of personal jurisdiction is proper under the forum state’s long-arm statute; if so, the second question is whether the exercise of jurisdiction comports with due process.
 
 Dakota Indus.,
 
 946 F.2d at 1387-88. Constitutional limits will determine whether jurisdiction over defendant is proper.
 
 See id.
 
 at 1389;
 
 see also Bankers Trust Co. v. Fidata Trust Co.,
 
 452 N.W.2d 411, 413 (Iowa 1990) (Iowa R. Civ. P. 1.306 permits jurisdiction to the extent allowed by the federal constitution).
 

 Due process requires that, in order to subject a nonresident to the jurisdiction of a state’s courts, the nonresident must have “certain minimum contacts with it such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ”
 
 Int’l Shoe Co. v. Washington,
 
 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted).
 

 The application of [the minimum contacts] rule will vary with the quality and nature of the defendant’s activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.
 

 Hanson v. Denckla,
 
 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The Supreme Court repeatedly has applied the “purposefully avails” requirement of
 
 Hanson. See Burger King,
 
 471 U.S. at 474-75, 105 S.Ct. 2174;
 
 World-Wide Volkswagen Corp. v. Woodson,
 
 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980);
 
 Kulko v. California Superior Court,
 
 436 U.S. 84, 94, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). The contacts with the forum state must be more than “ ‘random,’ ‘fortuitous,’ or ‘attenuated.’ ”
 
 Burger King,
 
 471 U.S. at 475, 105 S.Ct. 2174 (citations omitted). Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a period of time immediately prior to the filing of the lawsuit.
 
 Pecoraro v. Sky Ranch for Boys, Inc.,
 
 340 F.3d 558, 562 (8th Cir.2003) (citing
 
 Clune v. Alimak AB,
 
 233 F.3d 538, 544 n. 8 (8th Cir.2000)).
 

 The Eighth Circuit considers the following factors when evaluating the propriety of exercising jurisdiction under the due process clause: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.
 
 Dakota Indus.,
 
 946 F.2d at 1390;
 
 Land-O-Nod Co. v. Bassett Furniture Indus.,
 
 708 F.2d 1338, 1340 (8th Cir.1983);
 
 see also Bankers Trust Co.,
 
 452 N.W.2d at 413 (similar test). The first three factors are the most important.
 
 Dakota Indus.,
 
 946 F.2d at 1390;
 
 Bankers Trust Co.,
 
 452 N.W.2d at 413.
 

 The personal jurisdiction issue in this case is a close question. As the Supreme Court has noted, the determination of whether minimum contacts exist “is one in which few answers will be written ‘in black or white. The greys are dominant and
 
 *MCLXXII
 
 even among them the shades are innumerable.’”
 
 Kulko,
 
 436 U.S. at 92, 98 S.Ct. 1690 (1978) (quoting
 
 Estin v. Estin,
 
 334 U.S. 541, 545, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948));
 
 see also Helicopteros Nacionales de Colombia, S.A. v. Hall,
 
 466 U.S. 408, 419, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). It is nonetheless the Court’s job to reach a conclusion on the minimum contacts issue. In this case, the Court concludes that Lindgren has not made a prima facie showing that GDT had sufficient minimum contacts with Iowa to satisfy due process standards.
 

 MINIMUM CONTACTS UNDER ZIPPO
 

 The Eighth Circuit recently has indicated that when specific jurisdiction is premised on defendant’s Web site contacts with the forum, the appropriate analytical framework is that of
 
 Zippo Manufacturing Co. v. Zippo Dot Com. Inc.,
 
 952 F.Supp. 1119, 1124 (W.D.Pa.1997). (See
 
 Lakin v. Prudential Securities, Inc.,
 
 348 F.3d 704, 710-12 (8th Cir.2003) (finding the
 
 Zippo
 
 test appropriate for specific jurisdiction cases, in which the court considers, at a minimum, (1) the nature and quality of the contacts and (3) their relation to the cause of action)). The
 
 Zippo
 
 court observed that “the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet.”
 
 Zippo,
 
 952 F.Supp. at 1124. The court employed a “sliding scale” to measure the nature and quality of the commercial activity central to its personal jurisdiction analysis. It noted:
 

 At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.
 

 Id.
 
 (citations omitted).
 

 In deciding where to categorize GDT’s Web site on the
 
 Zippo
 
 scale, the Court is aided by the Eighth Circuit’s analysis of the Web site at issue in
 
 Lakin.
 
 In
 
 Lakin,
 
 the defendant maintained a sophisticated, interactive Web site in which a user could not only exchange information with the host computer, but could establish secure online accounts and complete online applications for home-equity loans and lines of credit. Because its site was available twenty-four hours a day, the court found it possible for the defendant “to have contacts with the [forum state] that are ‘continuous and systematic’ to a degree that traditional foreign corporations can never even approach.”
 
 Lakin,
 
 348 F.3d at 712 (citing
 
 Gorman v. Ameritrade Holding Corp.,
 
 293 F.3d 506, 513 (D.C.Cir.2002) (altered from original)). The court nonetheless placed the defendant’s extensive commercial Web site in the middle
 
 Zippo
 
 category, rather than classify it as one which “clearly does business over the Internet.”
 
 Id.
 

 
 *MCLXXIII
 
 A number of sister circuit courts have applied the
 
 Zippo
 
 test to cases of specific personal jurisdiction.
 
 See Toys “R” Us, Inc. v. Step Two, S.A.,
 
 318 F.3d 446 (3d Cir.2003) (specific jurisdiction analysis in trademark infringement case);
 
 ALS Scan, Inc. v. Digital Serv. Consult., Inc.,
 
 293 F.3d 707 (4th Cir.2002) (same);
 
 Bensusan Rest. Corp. v. King,
 
 126 F.3d 25 (2d Cir.1997) (same);
 
 Cybersell, Inc., v. Cybersell, Inc.,
 
 130 F.3d 414 (9th Cir.1997) (same);
 
 CompuServe, Inc. v. Patterson,
 
 89 F.3d 1257 (6th Cir.1996) (same);
 
 see also Young v. New Haven Advocate,
 
 315 F.3d 256 (4th Cir.2002) (specific jurisdiction for defamation action). In
 
 ALS,
 
 the Fourth Circuit adopted and adapted the middle category
 
 Zippo
 
 test, emphasizing that personal jurisdiction requires
 
 “purposeful
 
 conduct directed at the State.”
 
 ALS,
 
 293 F.3d at 712-13 (emphasis in original).
 

 In the present case, GDT’s site consists primarily of single point-of-sale transactions rather than the continuous, long-term contracts at issue in
 
 Lakin.
 
 While GDT’s site allows visitors to establish an online account, the account is for convenience purposes only and entails no continuing obligations. (Def. Ex. A-l at 5.) Accordingly, GDT’s less extensive site must also be evaluated in the middle
 
 Zippo
 
 category.
 

 Prior to the filing of this action, GDT’s only conduct directed at Iowa was the state’s inclusion on a drop-down menu on the shipping page of GDT’s Web site. (Hoffman Aff. ¶¶ 4-13;
 
 see also
 
 Def. Ex. A-l.) The shipping page enabled shipment around the world — to Uzbekistan or Palau, if the customer so indicated. Shipments were contracted to FedEx as the third-party carrier, with the costs to be paid by the consumer. (Def. Ex. A-l at 6.) While GDT’s Web site is both commercial and highly interactive, the site is arguably no more directed at Iowa than at Uzbekistan. “The fact that someone who accesses defendants’ Web site can purchase a [JEAN JEWEL] does not render defendants’ actions ‘purposely directed’ at this forum.”
 
 Millennium Enter., Inc. v. Millennium Music, LP,
 
 33 F.Supp.2d 907, 921 (D.Or.1999);
 
 see also Graduate Management Admission Council v. Raju,
 
 241 F.Supp.2d 589 (E.D.Va.2003) (finding the shipment to two Virginia customers of materials purchased via defendant’s website which allegedly infringed plaintiffs trademark an insufficient basis for personal jurisdiction). As GDT’s Web site could be accessed anywhere, including Iowa, its existence does not demonstrate an intent to purposefully target Iowa.
 
 Young,
 
 315 F.3d at 262-63.
 

 To bolster her claim that GDT directed its activities at Iowa, Lindgren points to GDT’s post-filing Internet sales to Iowa residents. (PL’s Res. Mot. Dis. or Trans, at 6, 7;
 
 see also
 
 Hoffman Aff. ¶ 9.) These sales are irrelevant for jurisdictional purposes, however, as the Eighth Circuit’s ruling in
 
 Pecoraro
 
 clearly indicates that the defendant’s minimum contacts must exist prior to the filing of the lawsuit.
 
 Pecoraro,
 
 340 F.3d at 562. Yet even were the Court to consider these post-filing sales, they are more akin to “fortuitous” or “attenuated” contacts than to the “substantial connection” required under due process.
 
 Burger King,
 
 471 U.S. at 475, 105 S.Ct. 2174. There is no evidence that GDT took any purposeful action towards Iowa — it did not direct any paid advertising to Iowa or solicit Iowa residents to visit its Web site. It merely processed the orders from Iowa customers who visited its site. “Merely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state.”
 
 Iowa Elec. Light and Power Co. v. Atlas Corp.,
 
 603 F.2d 1301, 1303 (8th Cir.1979),
 
 cert. denied,
 
 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980). Furthermore, under both the California and Iowa versions of the U.C.C., the sales were made F.O.B.
 
 *MCLXXIV
 
 seller with the carrier acting as the buyer’s agent. Title thus passed to the buyer in California when GDT delivered the items to FedEx for shipment.
 
 See
 
 I.C.A. § 554.2401(2)(a) (2001); Cal. Com.Code § 2401(2)(a) (2002);
 
 see also Butler v. Beer Across America,
 
 83 F.Supp.2d 1261, 1264 (N.D.Ala.2000) (finding that purchase of beer from Illinois defendant’s Web site by Alabama plaintiffs underage son was completed in Illinois). Consequently, the Internet sales were clearly made in California, and are an insufficient basis for personal jurisdiction over GDT in Iowa.
 

 CALDER “EFFECTS TEST”
 

 As an additional basis of personal jurisdiction, Lindgren seeks to invoke the “effects test” of
 
 Calder v. Jones,
 
 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). (Pl.’s Res. Mot. Dis. or Trans, at 8-10.) This test “allows the assertion of personal jurisdiction over non-resident defendants whose acts ‘are performed for the very purpose of having their consequences felt in the forum state.’ ”
 
 Dakota Indus.,
 
 946 F.2d at 1390-1. The touchstones of the “effects test” are as follows:
 

 A defendant’s tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant’s acts (1) were intentional, (2) were “uniquely” or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered — and which the defendant knew was likely to be suffered — there.
 

 Zumbro, Inc. v. Cal. Natural Prods.,
 
 861 F.Supp. 773, 782-83 (D.Minn.1994) (Kyle, J.).
 

 Here, Lindgren asserts that because the alleged confusion occurred in Iowa, and her principal place of business is in Iowa, the “brunt” of the injury is felt here. (Pl.’s Res. Mot. Dis. or Trans, at 9, 10.) Additionally, she argues that her registration of the JEANJANGLES name put GDT on constructive notice that infringement of that name would harm her in Iowa. Lindgren claims that these factors support jurisdiction according to the
 
 Colder
 
 “effects test.”
 
 Id.
 

 Courts “have struggled somewhat with Colder’s import, recognizing that the case cannot stand for the proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction.”
 
 Bancroft & Masters, Inc. v. Augusta Nat’l Inc.,
 
 223 F.3d 1082, 1087 (9th Cir.2000). The Eighth Circuit clearly has refused to abandon the traditional minimum contacts test when relying on
 
 Colder. See Dakota Indus.,
 
 946 F.2d at 1391. Thus, in
 
 Hicklin Eng’g, Inc. v. Aidco, Inc.,
 
 959 F.2d 738, 739 (8th Cir.1992), the court found that although the defendants’ alleged harmful activities may have harmed the plaintiff in Iowa, “absent additional contacts”, this effect alone [was] not ... sufficient to bestow personal jurisdiction [in Iowa].
 

 The Eighth Circuit has used the
 
 Colder
 
 test merely as an additional factor to consider when evaluating a defendant’s relevant contacts with the forum, and circuit courts have declined to grant personal jurisdiction solely on the basis of forum state effects from an intentional tort.
 
 Dakota Indus.,
 
 946 F.2d at 1391 (stating that consideration of additional factors when an intentional tort is alleged is required, and that the use of a trademark with knowledge of the infringement qualifies as intentional tortious wrongdoing to which the
 
 Colder
 
 “effects test” applies);
 
 Ballistic Products, Inc. v. Precision Reloading, Inc.,
 
 2003 WL 21754816 (D.Minn.2003) (in domain name dispute alleging intentional trademark infringement, where general jurisdiction existed due to defendant’s extensive and ongoing commercial contacts in the forum,
 
 Colder
 
 “effects test” was additional factor in support of finding of specific jurisdiction);
 
 Mulcahy v. Cheetah
 
 
 *MCLXXV
 

 Learning LLC,
 
 2002 WL 31053211 (D.Minn.2002) (plaintiff in copyright infringement suit could not maintain personal jurisdiction over non-resident defendant based solely on harmful effects felt in forum which arose from defendant’s Internet activities). While
 
 Colder
 
 lends support to Lindgren’s jurisdictional claims, it does not provide an independent basis for personal jurisdiction in the Eighth Circuit.
 

 The facts of this case do not meet the “express aiming” requirement of
 
 Colder. Calder,
 
 465 U.S. at 789-90, 104 S.Ct. 1482. GDT did not intentionally direct its activities at Iowa knowing that Lindgren could be harmed through its Web site. Lind-gren contends that GDT had constructive notice, based on the presence of JEAN-JANGLES in the federal trademark database, that its JEAN JEWEL mark could infringe her trademark rights in Iowa. (Pl.’s Res. Mot. Dis. or Trans, at 9, 10.) This contention, however, is undermined by the fact that the U.S. Patent and Trademark Office (USPTO) issued a Notice of Allowance for GDT’s mark on September 16, 2003, signifying that the mark survived the trademark opposition period and has consequently been allowed for registration. United States Patent and Trademark Office (USPTO), Trademark Applications and Registrations Retrieval (TARR), at http://tarr.uspto .gov/serv-let/tarr?regser=serial & entry=7813029 9 & aetion=Request+StatusGlossary (detailing the current status of the Jean Jewel mark);
 
 see also
 
 USPTO, Glossary, at http://www.uspto.gOv/main/glossary/# n (defining the significance of a Notice of Allowance). Given that a USPTO examining attorney’s search of the database failed to identify Lindgren’s mark as confusingly similar to GDT’s, this Court declines to find that such “constructive notice” evidences a purposeful intent on the part of GDT to target their activities at Iowa. Absent additional minimum contacts and evidence that defendant expressly aimed their conduct at Iowa, the
 
 Colder
 
 “effects test” does not support personal jurisdiction over GDT in Iowa.
 

 Lindgren submits that GDT’s use of the JEAN JEWEL mark to identify their Web site and products has caused actual confusion in the marketplace. (Pl.’s Res. Mot. Dis. or Trans, at 1, 8-12.) Yet the only evidence of harm to Lindgren are the post-filing Internet sales. Even if the Court were to consider the post-filing sales to Iowa residents, as discussed above, those California purchases are not sufficient to subject GDT to personal jurisdiction in Iowa. They are, however, sufficient to confer personal jurisdiction over GDT in California. This Court recognizes that Iowa has a strong interest in providing a forum to protect its citizens from trademark infringement and unfair competition, and that Lindgren would no doubt be inconvenienced if forced to litigate her claim in California. These considerations do not, however, obviate the requirements of due process:
 

 Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.
 

 World-Wide Volkswagen,
 
 444 U.S. at 294, 100 S.Ct. 559.
 

 CONCLUSION
 

 Viewing the circumstances of this case as a whole, Lindgren has failed to make a prima facie case of personal jurisdiction over GDT. GDT lacks minimum contacts with Iowa and considerations of fairness
 
 *MCLXXVI
 
 and justice do not warrant an exercise of personal jurisdiction by this Court. Although this Court lacks jurisdiction, it finds that Lindgren’s claims may continue in the Central District of California, Western Division. Therefore, GDT’s Motion to Dismiss is DENIED. Its alternative Motion to Transfer to the United States District Court for the Central District of California, Western Division pursuant to 28 U.S.C. § 1404(a) is GRANTED. DATED this 3rd day of March, 2004.