**CENTURION WIRELESS TECHNOLOGIES, INC., Plaintiff,**

v.

**HOP–ON COMMUNICATIONS, INC., Hop–On.com, Inc., and Hop–On Wireless, Inc. Defendants.**

**No. 8:04 CV 65.**

United States District Court, D. Nebraska.

Sept. 28, 2004.

Brian M. Mumaugh, Holland, Hart Law Firm—Greenwood Village Denver Tech Center, Greenwood Village, CO, Theresa D. Koller, Blackwell, Sanders Law Firm, Omaha, NE, Timothy P. Getzoff, Holland, Hart Law Firm, Boulder, CO, for Plaintiff.

Lyman L. Larsen, Stinson, Morrison Law Firm, Omaha, NE, for Defendants.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

This case is before the court on defendants' (collectively, "Hop–On") motion to dismiss, Filing No. 12, pursuant to Fed. R.Civ.P. 12(b)(2) and (3) for improper venue and lack of personal jurisdiction. The plaintiff alleges copyright infringement of a design for a cellular phone antenna, as well as related state law claims for breach of contract, conversion, and unjust enrichment. I have reviewed the record, including the parties' briefs, indices of evidence, and the relevant law. I conclude that personal jurisdiction and venue are proper in this case.

### BACKGROUND

Centurion Wireless, Inc. (hereinafter "Centurion") is a Nebraska corporation involved in designing and engineering antennas and power products for telecommunications and information technology purposes. Hop–On is a Nevada corporation engaged in the business of telecommunications, selling among other products, disposable cellular phones.

Hop–On's employee Melyssa Banda contacted Centurion by phone or email in relation to designing an antenna for a cellular phone. The parties then entered into a contract January 22, 2002, entitled "Statement of Work," signed by Steve Bowles, Vice President of Sales in Lincoln, Nebraska, Filing No. 1, attach. 1, in which Centurion agreed to design, develop, and integrate an antenna design for Hop–On and provide up to 100 prototype antennae. In addition, the contract provided that more prototype antennae could be sold at a per unit price. In consideration of the Statement of Work, Centurion was to be paid $10,000 by February 15, 2002. Centurion also agreed not to sell the antenna design to any other cellular phone manu-

facturers. To fulfill the contract, Hop–On mailed a check for $10,000 to Centurion in Nebraska. Once the design was complete, the additional antennas, if purchased, would be manufactured in Nebraska, China or Malaysia.

Centurion completed its work under the Statement of Work and made offers to manufacture up to 3,000,000 antennas, but Hop–On declined. Centurion alleges that Hop–On then offered to buy the design, but the parties could not agree on a price. Centurion's final offer was to sell the antenna design for $45,000.

On April 7, 2003, Centurion was contacted by Banda, the former vice-president of Hop–On, and informed that even though Hop–On had not purchased the antenna design, it had copied and used it in their phones. On May 9, 2003, Centurion's attorneys contacted Hop–On and offered to sell the design to Hop–On for $45,000 and forgo any lawsuits arising from Hop–On's alleged usage. Hop–On did not agree to make the payment and Centurion initiated this lawsuit.

Hop–On's phones which used the Centurion antenna design were sold at Walgreens stores in California. Hop–On operates a Web site at Hop–On.com, which provides some information about phones and contact information. Through considerable effort involving several emails and a phone order from a Walgreens store, Centurion's attorney purchased a phone, which was shipped to Colorado. The parties have offered disagreeing affidavits as to the public accessibility to this Web site as a vehicle to purchasing the phones at issue in this lawsuit. No phones are alleged to be sold to Nebraskans, shipped into Nebraska, or made available to Nebraskans through any efforts besides those undertaken by Centurion's attorney.

## PERSONAL JURISDICTION

■ "To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating, by a prima facie showing, that personal jurisdiction exists." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir.1998). Plaintiff only has to make a prima facie showing to establish personal jurisdiction in a motion to dismiss. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). If the court does not conduct an evidentiary hearing on the issue of jurisdiction, but instead relies upon the pleadings and affidavits, it views the facts in the light most favorable to the party opposing the motion. *Boley v. Commercial Carriers, Inc.*, 1996 WL 118280, *4 (E.D.Mo. 1996) (citations omitted); *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir.1977). A court may exercise personal jurisdiction over a defendant if the defendant's activity falls within the scope of the state long-arm statute and if the exercise of jurisdiction under the state statute does not violate federal due process standards of fair play and substantial justice. *Id.* The Nebraska long-arm statute provides as follows:

A court may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to the cause of action arising from the person;

   (a) Transacting business in this state;

   (b) Contracting to supply services or things in this state;

   (c) Causing tortious injury by an act or omission in this state;

   (d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue

from goods used or consumed or services rendered, in this state;

. . . . .

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

Neb.Rev.Stat. § 25–536 (2003).

■ The court does not ask which forum's contacts are the best in determining the issue of personal jurisdiction, but merely asks if they are sufficient to conform with standards of fair play and substantial justice. *See Lakin v. Prudential Secs.*, 348 F.3d 704, 709 (8th Cir.2003). In determining the issue, the court first asks whether the defendant has acted in a way that he could reasonably expect to be haled into court in the given jurisdiction. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This fair warning requirement is met by a defendant who has purposefully directed his activities at people in the forum and the suit arises from the allegedly injurious consequences of those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Supreme Court has found that those who reach out and create continuing contractual relationships and obligations in a forum state are subject to personal jurisdiction. *Id.* at 473, 105 S.Ct. 2174. The connections created by the defendant must create a substantial connection to the state that is more than fortuitous or random. *Id.* at 476, 105 S.Ct. 2174. Defendants who commit intentional acts of copyright infringement have "a closer relationship with the forum . . . ." *Janet Russell Designs, Inc. v. Mendelson & Assoc., Inc.*, 114 F.Supp.2d 856, 862 (D.Minn.2000).

■ The Eighth Circuit adopted a five-factor test in *Aftanase v. Economy Baler Co.* that is used to determine whether personal jurisdiction is appropriate. 343 F.2d 187, 197 (8th Cir.1965). The five factors are the following: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *See also Burlington Indus. v. Maples Indus.*, 97 F.3d 1100 (8th Cir.1996).

## DISCUSSION

The motion to dismiss by defendants, Filing No. 12, was made on the grounds of lack of jurisdiction over the person of defendants and for improper venue. It was not made on the grounds of lack of subject-matter jurisdiction, although the defendants have made some indications that the plaintiffs may not possess a copyright for the antennas in question.[1]

■ The Nebraska long-arm statute reaches to the extent allowed by the con-

---

1. This issue is clearly of importance, as it would undermine the claim which gives this court exclusive subject-matter jurisdiction. *See* 17 U.S.C. 411(a); *Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 630 (6th Cir.2001). However, there are several reasons that this issue will not be addressed in full at this time. First, defendants have moved for dismissal only on the grounds of personal jurisdiction and venue, and those are the issues most immediately at hand. Second, the court does not have the evidence with which to determine the issue at this time, merely conflicting assertions from the attorneys which are unsupported by evidence aside from the defendants' attorney's statement that the registration form appears to be a rejection. Finally, the parties are from different states and it is not clear to a legal certainty that when considering the lost revenues of the would-be sale and various other damages would fall below the $75,000 jurisdictional minimum. *See Kopp v. Kopp*, 280 F.3d 883 (8th Cir.2002).

stitutional constraints of due process. *Quality Pork Int'l v. Rupari Food Servs.,* 267 Neb. 474, 675 N.W.2d 642, 649 (2004). Specifically, the Nebraska long-arm statute makes all defendants who have transacted any business in the state amenable to suit. Neb.Rev.Stat. § 25-536(1)(a) (2003). The definition of "transacting business" in Nebraska is a broad one, encompassing even those actions made through other foreign companies which acted as intermediaries. *See Quality Pork Int'l,* 675 N.W.2d at 649. In *Quality Pork,* the defendant, a Florida corporation, had agreed in an oral contract made by telephone to pay for meat from a Nebraska company which was shipped to a third party in Texas. The defendant corporation had no other contacts with Nebraska, had not registered to do business in Nebraska, and made no sales there. Nonetheless, the Nebraska Supreme Court found that the oral contract, acceptance of invoices, and payment for two of the three orders amounted to transacting business in the state. *Id.* at 649-50. The court must determine whether subjecting Hop–On to personal jurisdiction in Nebraska violates its due process rights.

■ There is *no* general jurisdiction over Hop–On, as their activities in Nebraska are not continuous and systematic. *See Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952). The contacts with Nebraska include the "Statement of Work," design creation, and email and phone communications with Centurion, and a Web site which appears until recently to have been used in an attenuated manner for sales. No sales are alleged to have occurred in Nebraska. Thus, if jurisdiction exists, it only exists specifically for those acts which are related to Hop–On's connections with the state of Nebraska. *See Burlington Indus.,* 97 F.3d at 1103.

■ Hop–On contends that the act was directed at Californians, since it is consumers in California who bought the phones utilizing the antenna at question. Though the location of such consumers may help create a prima facie case, the purchasers or consumers of a product which violates copyright laws are not conclusively those who the act is directed towards. *See Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (finding that magazine's state of widest circulation is only one of the factors in determining where their allegedly libelous acts were aimed). Similarly, the place of residence of the plaintiff is not conclusive in trademark infringement cases. *See Lindgren v. GDT, LLC,* 312 F.Supp.2d 1125 (S.D.Iowa 2004).

Centurion argues that Hop–On has made its phones available nationwide and actively recruits distributors in Nebraska. While it is admitted that Hop–On has a Web site, it has not been actively soliciting orders. Even if it were, this would not necessarily establish jurisdiction. *See Lindgren,* 312 F.Supp.2d 1125. Furthermore, it is undisputed that Hop–On also made communications to Nebraska by mail and telephone. However, the use of mail and telephone contacts with a state, even when sending payments, does not by itself meet the requirements of due process. *See T.J. Raney & Sons, Inc. v. Security Sav. & Loan Assoc.,* 749 F.2d 523, 524 (8th Cir.1984).

However, I find that all of the factors in this case, when viewed in their entirety, suggest that Hop–On could reasonably anticipate being forced to defend in Nebraska. First, Hop–On decided to reach out to a Nebraska company. Second, the act of copyright infringement that is alleged is an intentional act directed at the creator of the antennas. Unlike the *Lindgren* case, this is not a case of substantially similar

goods, as they are precise copies in a way that could not have plausibly occurred without Hop–On's intent to copy. While the defendant in *Lindgren* could at least claim there was no intentional act targeted at the Iowa plaintiff, Hop–On's conduct in this case puts it beyond all doubt that the design of Centurion was "targeted" and the question to be decided was whether it was "targeted" in an illegal manner. Furthermore, the manufacture of future antennas covered by the contract was to occur in Nebraska, Malaysia, or China. The harm alleged by Centurion was suffered in Nebraska. Hop–On made the design contract with Centurion with full knowledge of its location in Nebraska, made the initial $10,000 payment, and continued correspondence with Centurion in the state of Nebraska by mail and telephone. Therefore, it is evident that its effort in reaching out to Centurion to contract for a purchase of antenna designs amounts to "transacting business" in Nebraska. I conclude that these factors are sufficient for the plaintiff to make out a prima facie case of jurisdiction.

### VENUE

The venue provision states in relevant part: "Civil actions, suits or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Courts interpreting the copyright venue provision have concluded that a corporation is found in any district in which personal jurisdiction might be obtained over it. *See, e.g., Mode Art Jewelers Co. v. Expansion Jewelry, Ltd.*, 409 F.Supp. 921, 923 (S.D.N.Y.1976). I conclude that venue is appropriate in Nebraska.

THEREFORE, IT IS ORDERED that defendants' motion to dismiss, Filing No. 12, is denied.