# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 6, 2023          Decided June 21, 2024

No. 22-7073

TANYA ALLEGRA MILLS,
APPELLANT

v.

ANADOLU AGENCY NA, INC.,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-03061)

———

*Omar Vincent Melehy* argued the cause and filed the briefs for appellant.

*Brendan J. Klaproth* argued the cause and filed the briefs for appellee.

Before: PILLARD and CHILDS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Tanya Mills sued broadcaster Anadolu Agency under the D.C. Wage Payment and Collection

Law.  Mills alleges she worked as an Executive Producer in Anadolu's D.C. news bureau until she was terminated in July 2019.  She claims that Anadolu unlawfully delayed the payment of her final month's wages and that it continues unlawfully to withhold the value of her accrued but unused leave.  She seeks the withheld compensation and statutory liquidated damages for the payment delays.

After Mills filed suit, Anadolu disclaimed ever having employed her.  Anadolu asserted that Mills was employed solely by its parent company—headquartered in Ankara, Turkey—which is not a party to this case.  Anadolu moved to dismiss Mills's suit for lack of personal jurisdiction, arguing that none of its contacts with the D.C. forum related to Mills's wage-payment claims.  The district court agreed and dismissed the case.

We reverse.  To establish personal jurisdiction, Mills need only allege facts sufficient to show Anadolu's purposeful contacts with the District of Columbia and a nexus between those contacts and her claim under D.C.'s Wage Payment and Collection Law.  She readily clears that bar.  Anadolu concededly maintains a news bureau physically present in the District of Columbia and staffed with on-site workers.  As the district court acknowledged, those facts establish the requisite "minimum contacts" manifesting Anadolu's deliberate affiliation with the D.C. forum.  And Mills's allegations that she earned the disputed wages working for Anadolu in its D.C. bureau plead the requisite link between her wage claim and Anadolu's forum contacts.  Anadolu cannot defeat personal jurisdiction by arguing that Mills's allegations fall short on the merits; personal jurisdiction does not depend on the sufficiency of Mills's allegations to state a viable claim under the Wage Law.

Even so, we hold that Mills has adequately pled a joint-employment relationship with Anadolu sufficient to survive its motion to dismiss for failure to state a legal viable claim. We also reject Anadolu's alternative ground for dismissal based on a forum-selection clause in an agreement Mills signed with Anadolu's Turkish parent company. Anadolu has not at this stage met its burden to show that clause is applicable to Mills's claim against it.

We accordingly remand to the district court for further proceedings.

**BACKGROUND**

Because the district court dismissed the complaint for failure to plead facts sufficient to establish personal jurisdiction, we assume the truth of facts plausibly alleged in plaintiff's amended complaint and draw all reasonable inferences in her favor. *See Urquhart-Bradley v. Mobley*, 964 F.3d 36, 40 n.2 (D.C. Cir. 2020). "Doing so permits us to establish governing propositions of law—a step that precedes either party's opportunity to obtain discovery and test the evidence in the adversarial process." *Atchley v. Astrazeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).

**A.**

Defendant Anadolu Agency, NA, Inc., is a broadcasting company headquartered in New York with an office in the District of Columbia. It is a wholly owned subsidiary of Anadolu Ajansi Turk A.S. (A.A. Turk), a Turkish news agency based in Ankara, Turkey.

Tanya Mills is a resident of New Jersey who, when she earned the disputed wages in 2019, was working at Anadolu's D.C. bureau. Mills was initially hired by A.A. Turk in 2018 to

work as an executive producer in Ankara. She received a signed offer letter stating the terms of her employment, which she signed and returned. A.A. Turk brought her on board as an Executive Producer at an annual salary of $131,000.00 (a gross payment of $10,916.67 per month), plus a housing allowance, healthcare coverage, travel expenses, school fees for minor children, company phone, a relocation allowance, 20 days per year of paid annual leave, plus additional compensatory leave if she worked on holidays. A.A. Turk requested that Mills also regularly sign "fixed-term consultancy agreement[s]," which it told Mills would govern their working relationship pending her receipt of a Turkish work visa. First Amended Complaint (Compl.) ¶ 10 (J.A. 11). She signed new "consultancy agreements" approximately every sixty days until the end of her employment.

In January 2019, Mills returned to the United States for personal reasons and, in March 2019, arranged to work as an executive producer in the D.C. bureau of Anadolu, A.A. Turk's U.S.-based subsidiary. From then on, Mills worked for Anadolu in the District of Columbia. She reported to a new supervisor, Maxine Hughes, an executive producer employed by Anadolu. When she worked in Anadolu's D.C. bureau, Mills kept the same job title, salary, and leave entitlements that she had in Ankara. Anadolu provided Mills a workspace in its D.C. office, and it issued her a company telephone, computer, and key fob to access the bureau. Anadolu also controlled the work Mills performed, setting Mills's work hours, schedule, and "the work rules that [she] was obligated to follow." Compl. ¶ 3 (J.A. 10). It was A.A. Turk, however, that paid Mills's salary and administered her employment benefits. Compl. ¶ 2 (J.A. 9).

Mills's time at Anadolu ended on July 29, 2019, when she received an email from Mehmet Ali Sevgi, a manager in

Anadolu's D.C. bureau, informing her that her current contract, due to expire on July 31, would not be renewed. Sevgi directed Mills to vacate her office that day and not return to work for the final two days of the existing contract.

Mills did not receive her last month's wages until August 24, more than two weeks after she was terminated. As for her unused leave, Mills had accrued twenty days of annual leave and four days of compensatory leave for which she has yet to be compensated. She claims Anadolu owes her a combined total of $76,780.42 for unpaid wages and liquidated damages.

**B.**

Originally enacted by Congress in 1956 "[t]o provide for the payment and collection of wages in the District of Columbia," the District of Columbia Wage Payment and Collection Law (Wage Law) provides basic protections to ensure that workers promptly receive payment for their work. Pub. L. No. 84-953, 70 Stat. 976, 976 (1956).

The statute sets out minimum processes and deadlines according to which employers in the District of Columbia must pay their employees. As relevant here, when an employee is discharged, the employer must pay all earned wages on or before the next working day. D.C. Code § 32-1303(1). For employees entitled to paid leave time, any accrued leave unused as of the time of discharge is treated as wages. *See Jones v. Dist. Parking Mgmt. Co.*, 268 A.2d 860, 861-62 (D.C. 1970). An employer that fails to pay wages promptly following an employee's termination is liable to that employee for liquidated damages equal to 10% of the unpaid wage amount for each working day the payment is late, up to a maximum of triple the amount of the delayed payment. *See* D.C. Code § 32-1303(4). The Wage Law provides that any aggrieved employee may bring a civil action against her employer to enforce these

provisions, and it entitles prevailing employees to recover "reasonable attorneys' fees and costs." *Id.* § 32-1308(a)(1)(A). The requirements of the Wage Law are mandatory, and none can be waived or set aside by agreement. *See id.* § 32-1305(a).

The Wage Law applies to virtually all private employment arrangements in the District. The statute's expansive reach reflects the lawmakers' concern about the significant financial harms wage theft imposes on individual workers and the D.C. economy. *See* D.C. Council, Comm. On Bus., Consumer and Regul. Affs., Bill 20-671, Wage Theft Prevention Amendment Act of 2014, at 2 (2014). The law applies to any firm "employing any person in the District of Columbia," D.C. Code § 32-1301(1B), and protects as an employee "any person suffered or permitted to work by" such an employer, *id.* § 32-1301(2).

Because the Wage Law is designed to afford all workers in the District recourse when they are not fully and promptly paid, it defines covered employers and employees exceptionally broadly. The Wage Law draws its definition of covered employees from the federal Fair Labor Standards Act (FLSA), and the D.C. Court of Appeals has interpreted the D.C. law's definition of employment to be coextensive with the FLSA's. *See Steinke v. P5 Sols., Inc.*, 282 A.3d 1076, 1084-85 (D.C. 2022). Congress in the FLSA defined "employ" as "to suffer or permit to work," 29 U.S.C. § 203(g), which is extremely broad in its reach. The FLSA's definition of employment drew from state child-labor laws, which imposed liability not only on businesses that directly employed children but also on "businesses that used middlemen to illegally hire and supervise children." *Antenor v. D&S Farms*, 88 F.3d 925, 929 n.5 (11th Cir. 1996) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 n.7 (1947)). The standard thus sweeps in work relationships that might not be treated as

employment under other statutes or traditional agency principles. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).

The Supreme Court has interpreted the FLSA's "suffer or permit to work" language to require courts to examine the "economic reality" of an employment relationship rather than rest on "technical concepts" such as the labels the parties attach to their relationship. *See Goldberg v. Whitaker House Co-Op., Inc.*, 366 U.S. 28, 33 (1961) (internal quotation marks omitted); *see also Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994). For purposes of the FLSA, courts may find an employment relationship even if the parties did not intend to create one. *See Brennan v. Partida*, 492 F.2d 707, 709 (5th Cir. 1974). That same approach applies to employment relationships under the Wage Law. *See Wright v. Off. of Wage Hour*, 301 A.3d 660, 678 (D.C. 2023).

## C.

Mills sued Anadolu in October 2019 to recover the value of her unused leave, plus liquidated damages for the delay of her final paycheck and the continuing delay in payment for the leave. Under the Wage Law, Mills's wages for her last month on the job ($10,916.67) and the balance of her leave ($14,555.52) were due the working day following her termination. D.C. Code § 32-1303(1). Mills eventually received her last month's wages seventeen working days after the statutory deadline. For those wages, she seeks only the statutory liquidated damage amount of 10% per day that the payment was delayed, which she calculates to be $18,558.34. Mills never received a payout of her unused leave, so she now seeks both the value of the unused leave, which she calculates to be $14,555.52, and liquidated damages. Because of the significant delay in payment, the accrued liquidated damages

related to her leave have long since reached the statutory cap of three times the unpaid amount, or $43,666.56. *See id.* § 32-1303(4). Mills accordingly seeks the value of the leave plus the capped maximum liquidated damages, together amounting to $58,222.08. In addition to monetary relief totaling $76,780.42, Mills seeks attorneys' fees and costs.

Anadolu moved to dismiss Mills's suit for lack of personal jurisdiction, *forum non conveniens*, and failure to state a claim under the Wage Law. Bypassing the forum-related arguments, the district court granted Anadolu's motion to dismiss for failure to state a claim. *Mills v. Anadolu Agency NA, Inc.*, No. 19-cv-3061, 2020 WL 6887690, at *8 (D.D.C. Nov. 24, 2020). The court held that Anadolu never employed Mills under D.C.'s Wage Law because Mills was hired to work for Anadolu's Turkish parent company, A.A. Turk. *Id.*

On Mills's first appeal, we vacated the district court's decision and remanded the case for further proceedings. *Mills v. Anadolu Agency NA, Inc.*, No. 20-7118, 2021 WL 9031043, at *1 (D.C. Cir. Aug. 19, 2021). We held that the district court lacked power to rule on the merits of Mills's claim without having first resolved Anadolu's challenge to the court's personal jurisdiction. *Id.*

On remand, the district court revisited Anadolu's original motion and dismissed the case for lack of personal jurisdiction over Anadolu. *Mills v. Anadolu Agency NA, Inc.*, No. 19-cv-3061, 2022 WL 2374669, at *5 (D.D.C. Apr. 28, 2022). The court acknowledged Anadolu's ample contacts with the District of Columbia: "Ms. Mills's claims arose when she was being supervised by Anadolu and working at Anadolu's D.C. office. Anadolu therefore had the requisite 'minimum contacts' with D.C. for purposes of specific jurisdiction." *Id.* at *4. The court nonetheless held those contacts inadequate to

support the court's exercise of personal jurisdiction over Anadolu in this case. It observed that "simply having a 'physical presence' in D.C. is insufficient by itself to establish personal jurisdiction" because "the claim for relief must result[] from alleged injuries that arise out of or relate to those activities." *Id*. at \*5 (alteration in original) (internal quotation marks omitted). Reading the complaint to allege that A.A. Turk was Mills's employer, so Anadolu was not, the court held that "the record is insufficient to establish that her claims regarding compensation . . . arose from, or are related to, Anadolu's actions in D.C." *Id.* (emphasis omitted). The court did not reach Anadolu's assertion of *forum non conveniens*.

Mills timely filed this second appeal.

## DISCUSSION

The district court had jurisdiction under 28 U.S.C. § 1332(a)(1). Our jurisdiction arises under 28 U.S.C. § 1291.

We review *de novo* the district court's dismissal of the amended complaint for lack of personal jurisdiction. *See Atchley*, 22 F.4th at 214. A plaintiff has the burden of establishing the court's personal jurisdiction over a defendant. *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021). We also review *de novo* Anadolu's alternative grounds for affirmance—that Mills failed to state a claim under the D.C. Wage Law, *see Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023), and that a forum-selection clause applies to her suit, *D&S Consulting, Inc. v. Kingdom of Saudi Arabia*, 961 F.3d 1209, 1213 (D.C. Cir. 2020). We assume the truth of a plaintiff's factual allegations and draw all reasonable inferences in her favor. *Atchley*, 22 F.4th at 214.

**A.**

Anadolu argues that the district court lacks personal jurisdiction to decide Mills's claim against it. Mills invokes the District of Columbia's long-arm statute authorizing suit based on "transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1). Because the statute's transacting-business provision authorizes "jurisdiction to the full extent allowed by the Due Process Clause," *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (quoting *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)), the statutory and constitutional grounds for specific jurisdiction here merge. *See* D.C. Code § 13-423(a)(7)(E).

Anadolu is incorporated in New York, but has ample contacts with the District, including its maintenance of a D.C. bureau. Mills does not argue that Anadolu is headquartered or otherwise so "at home" in the District of Columbia as to be amenable to general personal jurisdiction here on claims unrelated to its forum's contacts. She relies on allegations of Anadolu's claim-related contacts with the District of Columbia. For its part, Anadolu does not seek to minimize its substantial and ongoing contacts with the District of Columbia. Anadolu's position is, rather, that "Plaintiff's claims do not derive from any activity within the District of Columbia by Anadolu." Appellee's Br. 16. Anadolu asserts that Mills was not its employee, but an independent contractor of its parent company, A.A. Turk, and insists that Mills is seeking to "impute[] to Anadolu" for purposes of personal jurisdiction "A.A. Turk's contacts in the District of Columbia." Appellee's Br. 12. The determinative question is thus whether Mills's claim "arise[s] out of or relate[s] to" Anadolu's contacts with the District. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017)).

Mills's sole claim is that Anadolu delayed payment of her final wages and failed to cash out her unused leave time, entitling her to the withheld amounts plus liquidated damages under the D.C. Wage Law.  We have recognized as relevant contacts for personal jurisdiction over an employment dispute the defendant's forum contacts involving supervision, office management, and hiring or firing decisions.  In an employment discrimination suit against a Chicago-based company, for example, we held that the defendant company "had plenty of suit-related contacts with the District of Columbia" forum based on its maintenance of a D.C. office in which plaintiff worked.  *Urquhart-Bradley*, 964 F.3d at 42-43.  And claim-related contacts of the same company's Chicago-based manager, sued in his individual capacity, included overseeing the D.C. office, "continuing contacts with that office and its employees," and reaching into D.C. by telephone to fire the plaintiff.  *Id*. at 48.

Anadolu's alleged contacts with the District of Columbia likewise "relate to the factual circumstances giving rise to th[e] suit" for purposes of establishing specific personal jurisdiction over Anadolu.  *Koteen v. Bermuda Cablevision, Ltd.*, 913 F.2d 973, 975 (D.C. Cir. 1990); *see Ford Motor Co.*, 592 U.S. at 359.  Anadolu's maintenance of a fully equipped and staffed brick-and-mortar bureau in the District of Columbia presents no difficult question about whether it is amenable to suit in D.C. for employment disputes with its workers here.  It is.  And Mills has pleaded facts showing that she was a news producer for Anadolu's D.C. bureau when she earned the salary and benefits that are the subject of her claim.  Those facts link the circumstances giving rise to the suit to Anadolu's activities in the District of Columbia.

The complaint's allegations of claim-related forum contacts include the following:  Mills worked during the

relevant period for Anadolu at its office in the District. She performed work integral to Anadolu's business using Anadolu's space and equipment. Maxine Hughes, an Anadolu employee, supervised Mills's work. Mills received her notice of her termination from Mehmet Ali Sevgi, who physically worked at Anadolu's D.C. office. And the salary (for July 2019 wages) and leave that are the basis of her claim both accrued while she worked at Anadolu's D.C. office. These allegations suffice to establish that Mills's wage claim sufficiently relates to Anadolu's business activities in the forum to support the district court's personal jurisdiction to hear it.

Anadolu nevertheless insists that Mills is going after the wrong party. It argues that it never employed Mills, so cannot be answerable in the District of Columbia for her unpaid wages under the D.C. Wage Law. But that would be an argument in defense against Mills's claims on the merits. It does not affect the district court's personal jurisdiction over defendant here. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

**B.**

Anadolu contends that, even if Mills's allegations support the district court's personal jurisdiction over it, we should dismiss for failure to state a claim because Mills's allegations fall short of establishing that she was employed by Anadolu under D.C.'s Wage Law. *See Mills*, 2020 WL 6887690, at *8. We disagree and conclude that Mills has plausibly pleaded that Anadolu has an employment relationship with her sufficient to trigger obligations under the Wage Law.

The D.C. Wage Law defines covered employers to include any private entity "employing any person in the District of Columbia." D.C. Code § 32-1301(1B). Anadolu does not disclaim that it is an "employer" under the statute—at least

with respect to some people who work for it. But it asserts that it did not employ Mills. Anadolu points to the fixed-term consultancy agreements Mills regularly signed with A.A. Turk to argue that Mills was not an employee but an independent contractor of its parent company A.A. Turk. Alternatively, Anadolu urges, even if Mills was an employee, she was an employee of A.A. Turk alone.

Mills counters that she was not an independent contractor, that her relationship with Anadolu meets the unusually capacious definition of an employer-employee relationship under the Wage Law, and that A.A. Turk does not displace Anadolu as employer but acts together with it as a joint employer.

**1.**

Mills's complaint plainly suffices to allege that she was an employee for purposes of the D.C. Wage Law, not an independent contractor. The D.C. Court of Appeals has adopted the economic-reality test we elaborated in *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5 (D.C. Cir. 2001), to determine whether a worker is an independent contractor or an employee protected by the Wage Law. *See Wright*, 301 A.3d at 678; *Steinke*, 282 A.3d at 1084-85. That test evaluates whether the worker is "so dependent upon the business with which they are connected that they come within the protection of the [law] or are sufficiently independent to lie outside its ambit." *Morrison*, 253 F.3d at 11 (quoting *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311-12 (5th Cir. 1976)); *see also Steinke*, 282 A.3d at 1085. To that end, we consider factors such as the nature and degree of the alleged employer's control over how the work is performed, whether the alleged employee draws a salary or instead has "opportunity for profit or loss" or "investment in the business," and the permanency of the

working relationship. *Morrison*, 253 F.3d at 11. Under that analysis, "[n]o one factor standing alone is dispositive and courts are directed to look at the totality of the circumstances and consider any relevant evidence." *Id*.

The factors we identified in *Morrison* powerfully indicate that, when she did news production work at Anadolu, Mills worked as an employee. None of the factors suggests that she was an independent contractor working, in effect, as her own boss providing a contracted-for service. Mills alleges she worked as an Executive Producer, which is work that is integral to Anadolu's business as a news broadcasting company. She earned a regular salary and benefits, rather than a fee for service. She showed up daily at Anadolu's D.C. bureau, used Anadolu's equipment, and was supervised by an Anadolu manager. Anadolu controlled her work schedule, the work she performed, and set the rules for her workplace.

Anadolu retorts that Mills signed a fixed term "consultancy agreement" every 60 days throughout the time she worked there, so she must be an independent contractor. In light of the allegations describing the economic reality of her work for Anadolu, however, the formality of periodically signing a document labeled a consultancy agreement cannot support a ruling that Mills was an independent contractor. *Morrison*, 253 F.3d at 11 ("[F]acile labels and subjective factors, however, are only relevant to the extent that they mirror economic reality." (alteration in original) (formatting modified) (quoting *Brock v. Mr. W Fireworks*, 814 F.2d 1042, 1044 (5th Cir. 1987))). The economic reality inquiry "is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether 'the work done, in its essence, follows the usual path of an employee.'" *Scantland v. Jeffry Knight, Inc.*, 721 F.3d

1308, 1311 (11th Cir. 2013) (quoting *Rutherford Food*, 331 U.S. at 729).

**2.**

Applying *Morrison* to determine that Mills was an employee and not an independent contractor does not necessarily resolve whether Anadolu was her employer; on these facts, the law of joint employment also plays a role. Anadolu insists that Mills never worked for it, only for A.A. Turk. Like the FLSA, the D.C. Wage Law's definition of an employer is construed "broadly . . . to serve the remedial purposes of the" statute, so an "employee may have more than one employer under the law." *Wright*, 301 A.3d at 685 (formatting modified). We have concluded that the complaint describes sufficient indicia of control to manifest an employment relationship, but we must also consider "*who* is exercising that control, *when*, and *how*." *Browning-Ferris Indus. of Cal., Inc. v. NLRB*, 911 F.3d 1195, 1215 (D.C. Cir. 2018) (emphases in original).

The legal sufficiency of Mills's claim depends on whether either Anadolu or A.A. Turk alone, or both jointly, employed Mills. Only if Anadolu did not employ Mills at all—neither on its own nor jointly with A.A. Turk—would Mills's claim of an employment relationship with Anadolu fall short under the Wage Law. We conclude that Mills adequately alleged that Anadolu employed her jointly with A.A. Turk, so we need not determine whether on their own the allegations of Anadolu's controlling role over Mills's work render it her employer under the D.C Wage Law.

The joint-employment inquiry, like the *Morrison* analysis regarding whether a worker is an independent contractor or an employee, centers on economic realities. Whereas *Morrison* focuses on the relationship between worker and putative

employer, the joint-employment inquiry probes the "relationship between the employer who uses and benefits from the services of workers and the party that hires or assigns the workers to that employer." *Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 137 (4th Cir. 2017) (formatting modified). Under that inquiry, we look to factors that bear on the degree to which putative joint employers share control over typical employer prerogatives, including whether "one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer." *Id.* at 141 (delineating a six-factor test for joint employment). Control that is shared by two entities acting jointly might manifest an employment relationship even if such a relationship were not evident based on the degree of control exerted by one of the entities alone. *See id*. at 134.

We take Mills's plausibly pleaded allegations as true and draw all reasonable inferences from them in her favor. There is no way we can read Mills's factual allegations to compel the conclusion that Mills worked only for A.A. Turk. If we credit all plausible allegations and draw reasonable factual inferences in plaintiff's favor, as we must, the complaint shows that Anadolu employed Mills jointly with its parent company, A.A. Turk. For the period that Mills was working in the District of Columbia, Anadolu controlled the way Mills went about her work. Anadolu provided workspace and equipment, supervised Mills through its on-site manager, and set her work schedule and the workplace rules that Mills had to follow. And Mills's termination was effected by an employee working at the Anadolu D.C. bureau. A.A. Turk also played a role: A.A. Turk initially hired Mills to work in Ankara, and at her request assigned Mills to Anadolu's D.C. bureau. Mills reports being paid by A.A. Turk, even during her time working at Anadolu, and contacting an A.A. Turk employee to determine the amount of her accrued leave. Taken together, the allegations

of Anadolu and A.A. Turk's actions regarding Mills's work for Anadolu in D.C. make clear that A.A. Turk was not Mills's sole employer under the Wage Law, but employed her jointly with Anadolu. Indeed, even if Anadolu's alleged supervision and control over Mills's work, standing alone, did not establish the requisite employment relationship, A.A. Turk and Anadolu's combined influence certainly did.

Concluding that Mills adequately pled joint employment by Anadolu and A.A. Turk matters here because, if two entities are joint employers, the worker's employment is treated as "one employment" under the FLSA (and the D.C. Wage Law), making each employer jointly and severally liable for any violations. *Salinas*, 848 F.3d at 134. If Anadolu is a joint employer of Mills, then—with or without A.A. Turk— Anadolu can be held liable for Mills's wages and damages. *See Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014); *Ayala v. Tito Contractors, Inc.*, 82 F. Supp. 3d 279, 288 (D.D.C. 2015). A key implication of joint-and-several liability for joint employers is that plaintiffs need reach only one employer to recover. As with joint-and-several liability in tort, joint employment makes the joint actors each fully responsible to persons harmed by their conduct. Joint liability shifts from the plaintiff to the defendants the risk of one defendant's insolvency, *see* Restatement (Third) Torts: Apportionment of Liability § 10(a) (2000), or unreachability, *see id.* § C19(h), and the burden of determining the appropriate allocation of liability between them, *see id.* § 23.

\* \* \*

It bears emphasis that the economic-reality tests for distinguishing employment from independent contracting and identifying a joint-employment relationship are fact-intensive inquiries. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 481

(1964) (noting that the question of joint employment in the context of the National Labor Relations Act is "essentially a factual issue"); *Morrison*, 253 F.3d at 10-11 & n.3 (noting that the independent-contractor inquiry rests on the "totality of the circumstances" and each factor may require resolution of "subsidiary factual issues"); *Harris v. Med. Transp. Mgmt., Inc.*, 300 F. Supp. 3d 234, 243 (D.D.C. 2018) (collecting cases on joint employment under the FLSA). As with any fact-intensive issue, access to discovery and the development of a factual record can affect the analysis of the parties' relationships. We hold only that Mills has met her pleading burden regarding Anadolu's role as her employer.

## C.

We turn finally to Anadolu's contention that we should dismiss Mills's claims based on *forum non conveniens* because of a forum-selection clause in a "consultancy agreement" she signed with A.A. Turk. We review *de novo* whether a forum-selection clause is applicable, mandatory, valid, and enforceable, then review for abuse of discretion the weighing of the public- and private-interest factors. *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 876 (D.C. Cir. 2019). The district court did not rule on this defense, however, because it dismissed Mills's suit for lack of personal jurisdiction. We retain "discretion to consider alternative grounds for affirmance resting on purely legal arguments," *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 112 (D.C. Cir. 2020), and the applicability of a forum-selection clause is a question of law, *see Azima*, 926 F.3d at 876.

We hold that Anadolu has not borne its burden at this stage to show that the clause is valid and applicable to Mills's claim against it. Ordinarily, "[t]here is a 'substantial presumption' in favor of a plaintiff's chosen forum," and lawsuits usually

19

proceed where they are filed. *MBI Grp., Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 571 (D.C. Cir. 2010) (quoting *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 950 (D.C. Cir. 2008)). Defendants invoking *forum non conveniens* thus bear a "heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007). This strong presumption is displaced, however, if a pre-dispute agreement with the defendant reflects the plaintiff's prior choice of a different forum. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 63-65 (2013). In such a case, the law powerfully favors the pre-selected forum.

Anadolu argues that a clause in an agreement Mills signed with A.A. Turk chose Ankara, Turkey, as the forum for this case, requiring us to dismiss Mills's claim and leave her to re-file in Ankara if she so chooses. Pointing to the clause, Anadolu asserts that Mills has not pleaded the "rare, unusual, or uncommon" circumstances that make a forum-selection clause inapplicable. Anadolu Supp. Reply Br. 8 (quoting *Azima*, 926 F.3d at 880).

But Anadolu puts the cart before the horse. A forum-selection clause "essentially operates as an affirmative defense" and effects a waiver of the plaintiff's right to the forum. *See Bartels ex rel. Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 681 (4th Cir. 2018). As with any other affirmative defense, *see Crawford-El v. Britton*, 523 U.S. 574, 587 (1998), the defendant invoking a forum-selection clause bears the threshold burden to plead that there is a valid clause that encompasses the plaintiff's claims. A motion to dismiss based on a forum-selection clause typically will be granted, *Azima*, 926 F.3d at 874, but only if the clause the defendant identifies is valid, enforceable, mandatory, and applicable to the plaintiff's claims against it.

Anadolu has not yet made the requisite showing that the clause applies to Mills's suit. To prevail on this affirmative defense at the pleading stage, the "affirmative defense . . . [must] appear[] on [the] face" of the complaint. *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)). Mills's complaint acknowledges the clause in alleging that it does not apply. But we are unpersuaded at this stage that the terms of the forum-selection clause apply to this claim. The coverage of a forum-selection clause is determined by its language as read with reference to the general principles of contract law. *Azima*, 926 F.3d at 876. But the agreement here says it "applies only to related Consultancy Services," *see* Consultancy Services Agreement at 1 (J.A. 21), whereas Mills has pleaded an employment relationship.

Anadolu responds that Mills is estopped from asserting that the clause does not apply because, it says, she relies on the consultancy agreement with A.A. Turk to substantiate her claims that she is owed accrued but unused leave time. Mills disavows any reliance on that agreement to establish the amounts to which she is entitled. As she points out, the consultancy agreement does not even mention leave time. Her complaint alleges that she was afforded the same leave time and compensatory time, as described in her initial offer letter from A.A. Turk, when she shifted from working in Ankara to working for Anadolu in its D.C. bureau. None of Anadolu's arguments thus far questions the amounts of salary or leave to which Mills claims she is entitled.

Nor do the obligations the Wage Law imposes on Anadolu as an employer operating within the District of Columbia depend on the consultancy agreement; indeed, those obligations arise even in the absence of any written contract. D.C. Code § 32-1301. Mills's claim against Anadolu flows not

from her consultancy agreement with A.A. Turk, but from the facts showing that Anadolu "suffered or permitted" her to work in its D.C. bureau within the meaning of the Wage Law, *id.* § 32-1301(2)—facts she has adequately pled.

All that said, the decisive obstacle to Anadolu's *forum non conveniens* defense at this stage is the obviously flawed translation of A.A. Turk's consultancy agreement from Turkish to English. The incomplete and grammatically incoherent wording leaves us unable to make an authoritative legal ruling as to what the clause covers. Anadolu submitted documents reproducing side-by-side versions of the A.A. Turk consultancy agreement, one in Turkish and one in English. *See* Motion to Dismiss, Exs. 1-2, *Mills v. Anadolu Agency NA, Inc.*, No. 19-cv-3061 (D.D.C. Jan. 9, 2020), ECF No. 8. The forum-selection sentence in the English-language version states: "The Ankara Courts and enforcement offices shall be the exclusive authorized venues for the resolution of any matter of controversy or dispute between the parties relates there to." Consultancy Services Agreement at 2 (J.A. 22). We cannot discern with confidence whether the parties or claims here are encompassed by "any matter of controversy or dispute between the parties relates there to." More fundamentally, the flawed wording suggests that the translation is unsound. Without, at minimum, an interpretation we can rely on as authoritative— whether because the parties agree it is correct or because we so find based on expert testimony—we are in no position to make a legally binding interpretation.

Because Anadolu fails to carry its burden to demonstrate that Mills's consultancy agreement applies to these parties or this dispute, we cannot dismiss the suit based on Anadolu's claim of *forum non conveniens*.

## CONCLUSION

For these reasons, we reverse the district court's dismissal for lack of personal jurisdiction and remand for further proceedings.

*So ordered.*